## White v. City of Hopkinsville.

(Decided January 20, 1928.)

Appeal from Christian Circuit Court.

1.  Municipal Corporations.—Municipality is not liable for negligence of its agents, officers, and servants in discharging public or governmental functions, performance of which has been delegated to city by commonwealth, but municipality which undertakes to perform a duty for its strictly private benefit, whereby it embarks on a private enterprise, is liable for negligence.
2.  Municipal Corporations.—Infant son of one employed by city as engineer to operate engine in quarry was licensee as to city in entering premises of quarry to carry father his dinner.
3.  Municipal Corporations.—City held not liable for any negligence of its servants in permitting dynamite caps to be exposed in open building at quarry, causing injury from explosion to child who received them from another child, who had taken them while on city's premises as licensee, since operation of quarry, though for purpose of obtaining material to construct and repair streets, was governmental function.

JOHN C. DUFFY and DUFFY & SKINNER for appellant.

IRA D. SMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The city of Hopkinsville, in Christian county, maintained and operated a quarry located in its suburbs, but whether within or without its corporate limits does not definitely appear in the record. The product of the quarry was used in constructing, repairing, and maintaining the streets of the city, as appears from the averments of the petition. It was located off of Ninth street road a distance of between 150 and 200 yards, and there was a well-traveled road running from Ninth street road to the quarry. Near the quarry and a short distance from the road running to it was an old stone house that had been formerly used as a city prison, but it had been converted into and at the time of the accident here involved it was used for storing material used in the operation of the quarry, including dynamite and dynamite caps. In July, 1925, Sydney Burchett was employed by

the city as engineer, and he operated the engine that produced the power necessary in working the quarry. For some time prior thereto his infant son, who was between 7 and 8 years of age, would bring the father's dinner to him, and on the involved day he did so, and another young boy about his age accompanied him. After delivering the dinner to the engineer, the two boys left, and on their way home they passed by the stone house, the door to which was open, and which entered into a hall with rooms on either side. The door to the room on the left was likewise open, and sitting on its floor was an open box containing dynamite caps. They had brass casings and the two boys were attracted to them, and they put some of them in their pockets and carried them away. Later they met other boys, including appellant and plaintiff below, William P. White, who was an infant about their age, and they gave some of the caps to him, one of which, in the late afternoon, he exploded while holding it in his left hand, with the resultant loss of the little finger of that hand and more or less serious damage to the other fingers. This action was brought by him by his next friend against the appellee and defendant below, city of Hopkinsville, to recover damages for the injuries he sustained, upon the well-settled doctrine that those handling explosives, and especially if they are attractive to children of tender years, must take cognizance of their inclinations and indiscretions and exercise the requisite care to so guard the explosives as to prevent such infants from coming into contact therewith, or become liable for resulting injuries for a failure to do so, and which is a familiar doctrine in the law, and it has been recognized, applied, and upheld in many cases in this court. The answer was a denial of the material averments of the petition, and after all of the evidence was heard the court sustained defendant's motion for a directed verdict in its favor, which the jury accordingly returned, followed by a judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal after his motion for a new trial was overruled.

As stated, there are many cases from this court upholding the general doctrine upon which the cause of action as alleged in the petition was bottomed, but it is unnecessary to incumber this opinion with a recitation of all of them. The doctrine as applied by this court may be gathered from the opinion in the case of Stephens v. Stephens, 172 Ky. 780, 189 S. W. 1143, and other cases referred to therein. Later ones apply it when the

facts authorize it, and they also recite the limitations and qualifications of its application. But, for the purposes of this case, it is not necessary for us to determine whether the facts, as developed by the evidence, would ordinarily bring the case within the doctrine, since for the reasons stated below we have concluded after a painstaking research of the law that the peremptory instruction was proper. That being true, the judgment must be affirmed, although the inducement that influenced the trial court in sustaining defendant's motion may have been a different one and based upon a different ground than the one that we have concluded was the correct one. Therefore, whether the case was a submittable one under the evidence if defendant at the time was engaged in strictly private business, or if defendant was an individual operating a private business wholly disconnected from the performance of any governmental or public duty, as was true in all of the domestic cases to which our attention has been called or which we have been able to find, we need not determine.

Immunity from liability for negligence of a municipality in the performance of what is generally denominated "governmental functions" is a well-established rule in this and other jurisdictions. Some of the domestic cases so holding are Schwalk's Adm'r v. City of Louisville, 135 Ky. 570, 122 S. W. 860, 25 L. R. A. (N. S.) 88; Kippes v. City of Louisville, 140 Ky. 423, 131 S. W. 184, 30 L. R. A. (N. S.) 1161; Board of Councilmen of the City of Danville v. Fox, 142 Ky. 476, 134 S. W. 883, 32 L. R. A. (N. S.) 636; Braunstein v. City of Louisville, 146 Ky. 777, 143 S. W. 372, 42 L. R. A. (N. S.) 538; City of Louisville v. Bridwell, 150 Ky. 589, 150 S. W. 672; Flutmus v. City of Newport, 175 Ky. 818, 194 S. W. 1039; City of Bowling Green v. Bandy, 208 Ky. 259, 270 S. W. 837; Wyatt v. City of Henderson (Ky.), 300 S. W. 921 (decided on November 4, 1927, but not yet (officially) reported), and many others referred to in those opinions. What we have above stated, with the exception stated below, applies and renders the municipality immune from liability whatever may be the extent of the negligence of its agents, officers, or servants, upon the ground that in the performance of the particular duty it is discharging a public or governmental function the performance of which has been delegated to it by the commonwealth; and, since the latter could not be made liable for its negligence had it performed the particular duty with-

out any delegation of it to the municipality, the latter is likewise not liable for undertaking to perform such delegated duty. If, however, a municipality undertakes to perform a duty for its strictly private benefit, and whereby it embarks in a private enterprise usually carried on by individuals, the immunity is lifted and its liability for negligence attaches. Just where to draw the line separating the undertakings wherein the immunity prevails and those where liability attaches is sometimes a difficult task, as is pointed out by some of the opinions referred to.

In the Schwalks, Braunstein, Bridwell, and Wyatt cases, supra, the opinions expressly recognize and state that in the *maintenance* of public streets and ways within the municipality, for traffic and travel, although consisting in the performance of public functions and governmental duties, the city is made liable for its negligence in the failure to maintain them in a reasonably safe condition, under an exception to the general rule of non-liability of municipalities in performing governmental functions. In the Schwalks case the opinion referred to the shadowy distinction between municipal liability for failure to repair and maintain streets and public ways, under the exception stated, and absolute immunity from liability, howsoever great the negligence in the performance of other governmental functions. That opinion, after stating the universally recognized liability of municipalities "for negligence in not keeping their streets in repair" as an exception to the general rule, quoted with approval from the case of Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763, 18 L. R. A. 151, this language:

> "We think the courts could do better (in an effort to define the distinction) to rest (it) either upon certain special considerations of public policy or upon the doctrine of stare decis than to attempt to find some strictly legal principle to justify the distinction."

That same language was inserted with approval in the opinion in the Bridwell case, and we have been unable in the numerous other cases coming to this court following the latter one to find a more substantial or satisfactory ground than that contained in the excerpt from the opinion of the Minnesota court. Suffice it to say that liability of the municipality for negligence in failing to

properly maintain its public streets and walkways, although done in discharge of a governmental function, is too well rooted in the jurisprudence of this state to authorize us to now set it aside and disregard it and to thereby wipe out the exception to the general rule of nonliability, but which exception under the doctrine of stare decisis we feel constrained to continue to recognize and apply.

However, in the Fox and Braunstein cases the liability under the exception to the general immunity rule, supra, extends no further and is strictly confined to the physical *maintenance* of the *surface* of such streets and public ways and their freedom from like obstructions. In the Fox case the plaintiff was driving a buggy drawn by a horse on one of the streets of Danville, and it was both pleaded and proved that the employees and agents of the city, in operating a steam roller on that street, whereby its surface was rendered smooth, negligently caused and permitted the engine to the roller to emit large quantities of steam and to throw it towards and around the horse drawing plaintiff's buggy, thereby frightening it and rendering it unmanageable, whereby plaintiff sustained the injuries for which he sued. It was expressly stated in the opinion that plaintiff's injuries ''were due to and caused by the negligent act of the appellant's employees in throwing the steam under and about the horse, which was going gently by the roller, and would not have been frightened except for this negligent act.'' We held that the court erred in not granting defendant's motion for a peremptory instruction in its favor, and reversed the judgment in favor of plaintiff for that error alone, and which was upon the ground that defendant, through its agents and employees in operating the steam roller, was engaged ''in the performance of a governmental or public duty.'' It will be observed that, although the agents and servants of the defendant municipality, in that case, were negligent toward plaintiff in the question of the steam roller while at work on the street of the city, yet the latter was not liable under the exception to the general rule, supra, rendering it liable for the negligent maintenance of its streets, and that too, notwithstanding the work that was being performed appertained and related exclusively to the maintenance of the street.

In the Braunstein case plaintiff was an agent, servant, or employee of the city, engaged in the construction of a sewer on Spring street, in the city of Louisville.

About 200 yards therefrom was a quarry operated by the city, and through the negligence of those in charge of it, who were also employees of the city, plaintiff was injured by a flying rock set in motion by a negligent explosion at the quarry. The opinion held that the negligent servants or employees would be liable personally to plaintiff for the damages he sustained, but that the city was not liable to him because in operating the quarry it was performing a governmental function. It was insisted, however, in that case that the city was liable under the exception, supra, because of the fact that plaintiff was injured while in one of its public streets, and which it was its duty to maintain in a reasonably safe condition for travel. That contention, however, was denied in this language:

"It is also insisted that the plaintiff may recover because he was injured in a public street, and that it was the duty of the city to keep its streets reasonably safe. It is the duty of the city to keep its streets in reasonable repair for public travel, and to maintain them in a reasonably safe condition for this purpose. But the plaintiff was not injured by reason of any defect in the street. The street was in good condition; the trouble arose wholly from the casting of rocks into the streets."

If the city was not liable under the facts of the last two cases referred to, it is difficult to see wherein liability would attach in this case. In those cases the negligence of the agents and servants of the city was conceded, and plaintiffs were at a place where they had the right to be; i. e., on a public street at the time they were injured, and the negligence complained of produced the danger that resulted in the injuries to plaintiffs while they were traveling on the streets, but none of which dangers consisted in defects in the surface of the streets or obstructions therein whereby they were rendered unsafe for travel.

The negligence in the instant case consisted, at most, in the failure of the agents and servants of defendant in operating its quary to exercise proper care toward a particular class; i. e., infants of tender and indiscreet age, and whereby the dangerous explosives were exposed so that they were accessible to young Burchett, who was rightfully upon the grounds, since under the facts he was a licensee. Under such circumstances, if we should

hold that it was the duty of the agents and servants in charge of the quarry to have kept the building in which the dynamite was stored closed so as to render it inaccessible to trespassing children, it would only be saying that such agents and servants were guilty of negligence as to such class of persons in failing to do so, and, under the doctrine of the Fox and Braunstein cases, the city is not responsible for such negligence. The operation of the quarry by defendant for the purpose of obtaining material to construct or repair its streets, though pertaining and closely related to the performance of its duty to maintain them in a reasonably safe condition, did not bring the case within the exception to the general rule, supra, and the case must be determined according to that general rule which relieves defendant of liability for negligence in the discharge of the governmental function in which it was engaged at the time.

Were it not for the discussed immunity, and the case was one wherein liability existed under the general doctrine first mentioned above, the fact that young Burchett gave the caps to plaintiff would not render the act of the former in doing so a responsible intervening cause of plaintiff's injuries so as to make them too remote from the negligence complained of and to thereby disentitle him to maintain the action, as is clearly pointed out in the Stephens case, supra. The facts of this case create much sympathy for the infant plaintiff, and we have diligently searched to find some substantial ground upon which the action might be maintained, but without avail.

Wherefore the judgment is affirmed.

The whole court sitting.