## Van Pelt v. City of Louisville.

(Decided Dec. 21, 1934.)

EUGENE R. ATTKISSON, H. C. T. WHITTENBERG and GARLAND R. HUBBARD for appellant.

WILSON W. WYATT and W. J. GOODWIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Mrs. Verna Van Pelt, who was 25 years of age, was employed in the laundry of the city hospital of the appellee and defendant below, city of Louisville. She was at work at a machine for ironing the laundry, used chiefly by nurses, physicians, and attendants, and for bedding equipment in the operation of the hospital. The small amount of outside laundry work done therein was for the benefit of other city public undertakings, mostly, if not entirely, of towels used at public parks. Plaintiff fed the ironing table or machine from one end of it from whence the laundered article passed under a number of heated rolling irons and was received at the other end by another employee. One of her hands was caught under the first roller receiving the laundry, and was seriously dam-

aged, resulting in the loss of some of her fingers. She filed this action against the city of Louisville to recover damages therefor, which she placed in her petition at the sum of $20,000, for which amount she prayed judgment.

The answer denied the material averments of the petition and relied on exoneration from liability because defendant in maintaining the laundry for its hospital was performing a governmental function which, if true, exempted it from liability under numerous and unvarying rulings of this and other courts. The issues were so framed by the pleadings as that the trial court concluded that the evidence should be heard, and plaintiff introduced her proof, at the close of which he sustained defendant's motion for a peremptory instruction in its favor, and upon the verdict as therein directed judgment was rendered dismissing the plaintiff's petition, to reverse which she prosecutes this appeal.

Counsel for plaintiff, in their brief filed in this court, make these express admissions: "We have repeatedly admitted that the maintenance of the City Hospital is a governmental function," and "We, of course, admit that the maintenance of the Hospital itself for purely charitable purposes is governmental, but we can not extend this to the laundry." Whether those admissions were counsel's conclusions as based upon well-established principles of the law, or whether they were reluctantly forced upon them because of our opinions in the cases of Zachert v. City of Louisville, 214 Ky. 132, 282 S. W. 1071; Browder v. City of Henderson, 182 Ky. 771, 207 S. W. 479, and others referred to in those opinions, does not appear; but it is undoubtedly true that we held in them that a hospital (municipal or private) operated chiefly for charitable purposes and without private gain could not be held liable for damages sustained by servants and employees therein, notwithstanding they might proximately result from negligence on the part of some supervising agent or servant in charge of the machinery or agency causing the injury. The doctrine also applies to a like hospital conducted by a charitable institution wholly disconnected from governmental operation, as will be seen from the case of Cook, Adm'r v. John N. Norton Memorial Infirmary, 180 Ky. 331, 202 S. W. 874, L. R. A. 1918E, 647, and others cited therein.

It is unnecessary for us to repeat the reasoning lying at the basis of such exoneration, since the cases referred to furnish an abundant amount of it, and which the reader may obtain by consulting them. We have also applied the doctrine of municipal exoneration where the injury sued for occurred in the operation of other municipal and governmental undertakings, some of which appear in the cases of White v. City of Hopkinsville, 222 Ky. 664, 1 S. W. (2d) 1068; City of Bowling Green v. Bandy, 208 Ky. 259, 270 S. W. 837; Johnson's Adm'r v. Commissioner of Sewerage, etc., 160 Ky. 356, 169 S. W. 827, and others therein cited. In view of the admitted and well-settled doctrine in this jurisdiction, the question for determination is reduced to the very narrow one of—whether or not a laundry, operated in connection with and as a part of the administration of the functions of a hospital, constitutes a part of it as a necessary adjunct so as to apply the excusing doctrine for the benefit of the hospital management when the injury sued for happened to a servant employed in the laundry.

In arguing to the contrary, learned counsel say: "We submit that the Laundry has no direct relation to government; that it is not indispensable thereto or even essential," etc., and "the Laundry was not constructed by any requirement of the State, or at the expense of the State. The city may abandon the operation of the Laundry to-day without responsibility to the state; but not so the fire or police departments." We fail to comprehend the relevancy of that argument, or its logical adaptation to the facts of the case, since the laundry involved in this case is not an independent operation, wholly aloof from the hospital, but is essentially a necessary part of its operation as much so as water, heat, light, beds, and bedding (the cleansing of which is a part of the laundry work), or any other facility that contributed to the necessities of patients or the equipment of nurses, surgeons, and internes.

The same principle, on all fours with the one involved in this case, was before us in the Zachert Case supra, where the plaintiff therein sought to recover damages for injuries sustained by her through the explosion "of the boiler or drum of a steam sterilizer located in and used by the hospital," whereby surgical

instruments were cleansed and sterilized so as to restore them to proper condition for use in the treatment of patients. While it might not be so to the same extent with reference to laundries, yet they are as essential for cleanliness, as well as for the extermination of germs or other disease producing bacteria, that the linen of a hospital should be laundered, as it is that surgical instruments should be sterilized, and because of which we again repeat that we fail to discover any convincing force in counsel's argument, to the contrary.

Entertaining that opinion as did also the trial court, we conclude that its judgment was and is proper, and it is affirmed.