# Pelfrey's Adm'x v. City of Jackson.

June 12, 1942.

A. H. Patton and D. L. Hazelrigg for appellant.

C. S. Landrum and O. J. Cockrell for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On March 11, 1940, Selden H. Pelfrey was arrested by a policeman of Jackson, a city of the fourth class, and placed with another law violator in the city jail. Shortly after being locked in, a fire occurred in the building with the result that Pelfry lost his life. Appellant, his personal representative, instituted suit against the city for $25,000 damages to his estate, because of the alleged wrongful acts of the city, resulting in his death. To this petition the court sustained a demurrer; plaintiff declining further pleading the court dismissed her petition. On appeal she insists that it stated a cause of action.

The petition, besides charging the above facts, and as a basis for recovery, charged that the city had erected a large two-story stone building, "extending back 75 feet"; that the defendant, without authority of law, erected in the rear of said building what it terms a "city jail," built of the same material as the main building, "constructed in such manner that those inside cannot see out; that between the said building and the jail there is an open space of about 60 x 40 feet, inclosed by solid

sandstone walls, about 20 feet high and solidly joined to the main building and to the jail, and completely isolates said jail from communication with anyone in said main building, or elsewhere outside of said jail.''

It was further alleged that ''ever since its said erection, and at all times hereinafter mentioned, defendant has wrongfully and without authority of law, maintained said jail for the purpose of incarceration, and grossly and negligently refused to keep anyone in charge of said jail, or to look after the safety of persons confined in said jail.''

It was then charged that the jail was heated by open natural gas fires which endangered the safety of persons confined therein, and knowing these facts defendant failed and refused to make ''said jail safe for occupants,'' or their protection, or to make any ''arrangements * * * whereby those confined in the jail could summon aid in case of danger.''

After stating the arrest of deceased, it was charged that the policeman wrongfully incarcerated Pelfry in jail, locking him in with another prisoner, and ''negligently and with gross carelessness,'' left the two prisoners in said jail, when the defendant knew that both said prisoners were incompetent and unable to care for or protect themselves; that prior to the death of Pelfry the defendant had been warned that the jail was unsafe and dangerous to the life of people confined therein. It was also alleged that the jail, since its construction has been operated by defendant as a ''money-making'' institution.

The allegation that the city used the jail as a money-making institution is hardly sufficient to transform its use and operation from a governmental to a proprietary function. Sections 3490-22, 3490-23, Kentucky Statutes, empowers the city to erect a workhouse or station house for incarceration of law violators. Section 3498, Kentucky Statutes, provides that persons arrested for bailable offenses may be placed in the station house, to be kept until taken before a court for examination. The city only receives money when fines are paid or bonds forfeited. Kentucky Statutes, Section 3517. The jail was being operated as, and was a purely governmental function. See cases cited infra.

Counsel for appellant construes the petition as bas-

ing defendant's negligence upon the manner of construction of the jail, and its maintenance, particularly upon failure of the city to provide a jailer. Counsel recognizes and admits the general and well established rule to be that a city as such is not liable for the negligent acts of its agents and servants, but argues that the facts of the case, admitted to be true on demurrer, take it out of and beyond the rule; that here there was not, in the proper sense, the carrying out of a municipal governmental function. That the statutory duties, or such as may be imposed by implication, rest upon the municipality and liability should follow, as distinguished from the liability of the city for the negligent acts of its officers or servants.

It is insisted that a municipality does not "function" as the word is used in respect of its governmental capacity until the primary machinery required by law, or reasonably implied, has been set up and put into operation, and until safe provisions have been made for the care of prisoners, the city cannot be heard to invoke the plea of nonliability for the acts of its agents or officers.

The chief charge of negligence here is that deceased was locked up in a place where there was no one in charge so as to give aid in case of danger. If the city was negligent in failing to furnish a keeper, this was under an implied rather than statutory duty, since the statute does not provide for the election or appointment of jailer.

It is impossible for us to distinguish the case at bar from the many times cited case of Lexington v. Batson's Adm'r, 118 Ky. 489, 81 S. W. 264. There it was the duty of the city to establish and maintain an eruptive hospital. Under the statutory requirement the city had established such a hospital, and had appointed a board of health, and Batson, who during an epidemic had been exposed to smallpox, was ordered to the hospital by the proper authorities. While thus confined he died. His personal representative charged that the city had negligently permitted the pest house to become foul and in such condition as to be unfit for use as a hospital; that it negligently failed to provide a suitable place for treatment of those who had been exposed to or had disease; likewise that it negligently failed to provide competent physicians, medicines, clothing, food or competent per-

sons to care for the inmates. This case went to trial with verdict for plaintiff, and we found the evidence was sufficient to support the verdict, but upon authority of Twyman's Adm'r v. Board of Council of Frankfort, 117 Ky. 518, 78 S. W. 446, 64 L. R. A. 572, 4 Ann. Cas. 622, we reversed with directions to dismiss the petition. The duties imposed upon the authorities, and the charges of negligence, and the facts noted in the Twyman case, are so similar to those in the Batson case that we find it unnecessary to give further recital.

It may be noted that in the Twyman case we distinguished Clayton v. Henderson, 103 Ky. 228, 44 S. W. 667, 44 L. R. A. 474, Paducah v. Allen, 111 Ky. 361, 63 S. W. 981, 98 Am. St. Rep. 422, and McGraw v. Marion, 98 Ky. 673, 34 S. W. 18, 47 L. R. A. 593, on sound basic grounds. The Batson and Twyman cases are cited with approval in the more recent cases of Browder v. City of Henderson, 182 Ky. 771, 207 S. W. 479, and Zachert v. Louisville, 214 Ky. 132, 282 S. W. 1071, in both of which it appears that practically all former opinions of the court on the subject are collated. The two latter cases are referred to as authority for our decision in the case of Van Pelt v. Louisville, 257 Ky. 256, 77 S. W. (2d) 942, in which we held that the city in operating a laundry in connection with its hospital, was performing a governmental function, and hence not liable for an injury to one of its employees in operating the laundry.

The principle involved here is well announced in the case of Schwalk's Adm'r v. Louisville, 135 Ky. 570, 571, 122 S. W. 860, 25 L. R. A., N. S., 88, the only possible differentiation being that Schwalk was voluntarily upon the elevator charged to have been negligently maintained by the city, while here the deceased was a prisoner. That this would not be a distinguishable element is made clear by the Twyman and Batson cases, supra.

While the rule is perhaps harsh as applied under the facts of this case, yet we are not justified in overruling the cases announcing the principle as established by the opinions cited.

Judgment affirmed.