**WILCOX v. UNITED STATES.**
**BLOND v. UNITED STATES.**
**PANELLA v. UNITED STATES.**

United States District Court
S. D. New York.

Dec. 9, 1953.

Kuzmier, Zweibel, McKeon & Schmitt,
New York City (Morris Zweibel, New

**120**

York City, of counsel), for Antoinette Wilcox.

Golenbock & Komoroff, New York City, for Louis Blond.

George Ammerman, New York City (Sidney Schulman, New York City, of counsel), for Arnold Panella.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y., New York City (Milton R. Wessel, Asst. U. S. Atty., New York City, of counsel), for defendant.

MURPHY, District Judge.

These are three motions for summary judgment made by the United States in three suits brought against it under the Federal Tort Claims Act.[1] These cases, although each presents a separate and distinct controversy, are considered together in a single opinion because they involve the same defendant making the same motion in suits under the same statute. Two of these cases concern military personnel killed in an automobile and airplane respectively, and raise in common the question of whether their deaths were "incident to the service." These will be considered together under *I post.* The third case involves suit by a patient assaulted and battered by a fellow inmate in a government facility for narcotic addicts. Among other questions, this case presents one concerning exception from liability under the statute for torts arising out of assaults. Accordingly, it will be considered separately under *II post.* Immunity of the sovereign from suit stemming from the political doctrine that the King can do no wrong, had been transplanted and preserved inviolate as part of the American common law until relatively recent times.[2] Until 1946, general relinquishments of sovereign immunity by the United States were grudgingly few: permission was granted to sue only on contract,[3] patent infringement,[4] admiralty and marine torts,[5] and torts by public vessels.[6] Traditionally these exceptions have been rigorously construed.[7] The bulk of tort claims against the government had been relegated to an annual deluge of private bills, each one of which Congress was constrained to consider separately at great burden to its machinery ill-suited for their investigation and at considerable expense to the claimant.

After a generation of effort involving twenty abortive bills,[8] Congress ultimately adopted in 1946 the Tort Claims Act which in sweeping language replaced the private bill system with judicial procedure. Jurisdiction is there conferred on the district courts over "civil actions on claims against the United States * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government * * * under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[9] The statute has opened a vast field of litigation in the federal courts and its not altogether unambiguous language has posed novel problems of construction. In the three instant cases, the government has relied upon the maxim that "statutes in derogation of sovereign immunity must be strictly construed." On this extraordinary motion which seeks resolution on the merits of these controversies without trial of any issues of fact, the observation of the late Chief Justice ap-

1. 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412.

2. See Jackson, J. in Feres v. United States, 340 U.S. 135, 139–140, 71 S.Ct. 153, 95 L.Ed. 152.

3. 10 Stat. 612 (1855), as amended, 12 Stat. 765 (1863); 24 Stat. 505 (1887).

4. 36 Stat. 851 (1910), 35 U.S.C.A. § 68, now 28 U.S.C.A. § 1498.

5. 41 Stat. 525 (1920), 46 U.S.C.A. § 742.

6. 43 Stat. 1112 (1925), 46 U.S.C.A. § 781.

7. Schillinger v. United States, 155 U.S. 163, 166, 15 S.Ct. 85, 39 L.Ed. 108; United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058.

8. See Brooks v. United States, 337 U.S. 49, 51, 69 S.Ct. 918, 93 L.Ed. 1200.

9. 28 U.S.C.A. § 1346(b).

pears apposite: "We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement * * * 'The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.' " [10]

## I

With respect to military personnel the statute operates as a double-edged sword. On one side it imposes liability on the government for negligence "of any employee of the government while acting within the scope of his office",[11] defines such employee as including "members of the military or naval forces of the United States," [12] delimits scope of office in such instances as "acting in line of duty",[13] and finally excepts "Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." [14] Reported cases involving claims against the United States by private individuals arising out of negligence of servicemen under these sections indicate considerable reluctance on the part of the courts to extend by interpretation instances under which a serviceman is an "Employee of the government", or "acting in line of duty", or what constitutes a "claim arising out of the combatant activities" of the services.[15]

The opposite edge of the sword of liability, and that involved in the two instant cases, concerns suits by members of the armed forces against the government based upon negligence of its employees. On two occasions the Supreme Court has addressed itself at some length to this situation. In Brooks v. United States,[16] a serviceman while riding on the highway in his own automobile, not in performance of military duty, was killed in a collision with an Army truck driven by a civilian employee, under such circumstances that a person not a member of the armed forces would have a right of action under the Tort Claims Act. The court, with two dissenting Justices, held that membership in the armed forces did not preclude maintenance of the action, but intimated that damages recoverable should be reduced pro tanto by amounts payable under servicemen's benefit statutes. Feres v. United States [17] involved review of three decisions from three different circuits. In one case, a soldier on active duty perished by fire at camp, and the negligence alleged consisted of quartering him in unsafe barracks. In the second, eight months after required abdominal surgery in the Army, a towel marked "Medical Department U. S. Army" was discovered and removed from plaintiff's stomach. It was alleged that the Army surgeon was negligent. In the third, it was alleged that decedent met death while on active duty because of negligent and unskillful medical treatment by Army surgeons. Common to all three cases was that each serviceman was on active duty and not on pass or furlough. A unanimous court denied recovery in all of the cases. The Brooks case was distinguished in these terms:

"The injury to Brooks did not arise out of or in the course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission. A Government owned and operated vehicle collided with him. * * * the Government * * * contended that

---

10. United States v. Aetna Casualty and Surety Co., 338 U.S. 366, 383, 70 S.Ct. 207, 216, 94 L.Ed. 171.

11. 28 U.S.C.A. § 1346(b).

12. 28 U.S.C.A. § 2671.

13. Id.

14. 28 U.S.C.A. § 2680(j).

15. Cases collected, McNiece and Thornton, "The Federal Torts Claim Act," 5 Vand. L.Rev. 57.

16. 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200.

17. 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

there could be no liability \* \* \* solely because they were in the Army. This Court rejected the contention, primarily because Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders.

"We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." [18]

On this motion in the two instant cases the government contends that there is no issue of fact that the servicemen are outside the pale of Brooks and within that of Feres. In Wilcox v. United States (Civ.No. 78–186) the pleadings and affidavits indicate that Wilcox, the deceased, at the time of his death, was a sergeant in the United States Army stationed at Fort Jay, Headquarters Company, First Army, Governors Island, New York. Concededly, on Saturday, February 2, 1952, at about noon, Wilcox completed his assigned duties and went to the Fort's non-commissioned officers' club with a fellow sergeant. About 8 P. M., according to the government, Wilcox left the club "in fact on his way home at that time," with his companion in the latter's automobile. Wilcox resided with his wife off post in Brooklyn, New York. He did not arrive home. On February 12, 1952, his body and that of his companion were found in the latter's automobile about twenty feet off shore from Governors Island in New York Bay. Both men had died from drowning. At the time of death the government concedes that Wilcox was authorized to carry and had in his possession a "regular Class 'A' permanent pass."

Plaintiff as administratrix maintains this action on a theory that the government was negligent in maintaining the roadway and seawall on Governors Island, and that this was the proximate cause of Wilcox' death.

The government insists that the action is barred because of the military status of deceased under the doctrine of the Feres case. Army bookkeeping carries soldiers in the Morning Report as "absent" if on leave, but "present" if on pass. Since a pass is limited to 72 hours, the government argues, "the soldier on pass cannot go very far, for, also by regulation, a pass requires the soldier's return to his original station. \* \* \* For this reason, the soldier on pass has no freedom of choice as to where he will locate himself, unlike the soldier on leave."

We think at least some soldiers might soundly dispute the proposition that they have "no freedom of choice" on an off-duty 72-hour pass. The deceased, who is said by the government to have been on "active duty" at the time of death, is conceded by the government, in the next breath, to have been off-duty at the same time. "In fact, the special kind of pass carried by Wilcox was an off-duty pass and normally only permitted him to leave his base in the evenings, and from Saturday afternoon until Monday morning." The government contends that Wilcox was "within his military base" at the time the injury complained of was sustained, yet the government through counsel, swears that his body was located in a privately owned automobile "in New York Bay approximately 20 feet off shore from Governors Island" and that "an autopsy determined that [he] had died from drowning."

On the allegations in the government's affidavit alone, we are constrained to find an issue of fact concerning Wilcox' precise military status for purpose of application of the Tort Claims Act. Indeed, the government in its affidavit referring to the proximate cause of the accident avers: "Obviously this raises very difficult questions of fact, since

18. Id., 340 U.S. at page 146, 71 S.Ct. at page 159.

there are no witnesses to the accident itself." With this we are in accord with respect to the question whether or not Wilcox' death was "incident to the service." Other questions raised by the government are unsubstantial and accordingly the motion for summary judgment is denied.

■ For almost identical reasons, the result in the second case, Blond v. United States (Civ.No. 53–387) must also be identical. Blond was a private first class in the United States Air Force assigned as an on-the-job trainee for aircraft and engine mechanic at Reese Air Force Base, Texas, at the time of his death. He was killed while flying in a government aircraft 17 miles west of Rosamond, California, on April 4, 1949. Is there an issue of fact whether his death was "incident to the service?" The government insists there is none because deceased "requested and received a pass and permission to participate in a cross-country training flight" in the doomed aircraft on March 4, 1949. Yet the government in its affidavit and the commanding officer of deceased swear that "no special orders or formal Squadron orders were published, ordering [the deceased] to participate in [this] flight" and that the deceased "was not a rated airman." Both affidavits affirm that deceased was assigned as a trainee mechanic to Reese Air Force Base, Texas. Both concede that he had received a pass and permission to leave the base on his own request and not under orders of the service. Under these allegations, there is an issue of fact with respect to the military status of deceased at time of his death, and the motion for summary judgment is accordingly denied.

## II

■ The third case, Panella v. United States (Civ.No. 69–16), involves suit by an inmate of the United States Public Health Service Hospital at Lexington, Kentucky, against the government for $100,000 for injuries sustained when plaintiff was set upon and stabbed by another inmate of the facility. The proximate cause of the attack is alleged to be negligence of the government in failing to provide proper supervision and control because if sufficient guards or attendants had been present in the locked room, plaintiff would not have been injured. Plaintiff's presence in the hospital was that of patient, who had selected treatment at the government facility in lieu of twelve months of incarceration or probation after conviction as user of narcotics by the Kentucky State court.

Among other things the government insists the action under the Tort Claims Act is barred because of plaintiff's status as a patient without freedom of choice as to his location, under some analogy to the doctrine of the Feres case, *ante*,[19] and moreover that the charitable exemption of hospitals from tort liability under the law of Kentucky, the *locus delicti*, precludes recovery.[20] On both of these grounds, however, issues of fact still remain under the pleadings and affidavits so as to make unavailable disposition by summary judgment; e. g., whether the facility was an eleemosynary hospital or simply a prison.

■ A more serious objection to this action appears in the explicit language of the Tort Claims Act itself which excepts "any claim arising out of assault, battery * * *."[21]

While plaintiff's complaint is grounded on negligent omission of the government through its employees and not assault and battery of an inmate, it is undeniable that his claim "*arises out of* assault" and battery. Congress might have barred only claims *of* assault or battery. The language of the exception indicates a much broader class of claims.

19. 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

20. Cf. Williams' Adm'x v. Church Home, 223 Ky. 355, 3 S.W.2d 753, 62 A.L.R. 721; Van Pelt v. City of Louisville, 257 Ky. 256, 77 S.W.2d 942.

21. 28 U.S.C.A. § 2680 (h).

Plaintiff insists that the exception precludes recovery only when the assault or battery is inflicted by an employee of the government. Since the Tort Claims Act permits suit for injury "caused by the negligent or wrongful act or omission of any employee of the government",[22] it is argued that the exception modifies only this language. For three reasons this construction cannot be accepted:

(1) It would make unnecessary and redundant the inclusion of assault in the exception. Since the government permits suit only for "negligent or wrongful act or omission of any employee", and because assault cannot be negligent but only intentional, the exception of assault would amount to surplusage in the Tort Claims Act.[23] The word "wrongful" by alternate association with "negligent" does not expand the area of tort liability delimited by negligence.

(2) Such construction would lead to an absurd result. On one hand, the government would disclaim permission to sue for assaults by its own employees over whom it exercises a close measure of control and supervision, and yet at the same time grant such permission for suits when the assault is that of a third person not employed by the government and consequently not subject to such close supervision and control.

(3) The plain language of the statute bars "any claim arising out of assault, battery * * *" and not merely, as Congress could have explicitly provided, a claim stating a cause of action in assault or battery, or one arising out of assault or battery by an employee of the government.

Accordingly the motion for summary judgment by defendant is granted.

Settle orders in the three cases in accordance with the dispositions, ante.

---

22. 28 U.S.C.A. § 1346(b).

23. Cf. Jones v. United States, 2 Cir., 207 F.2d 563.