498

Mrs. Annie BLACKMON as Administratrix of the Estate of John M. Blackmon, deceased; and Mrs. Annie Blackmon as dependent widow of John M. Blackmon, deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 697.

United States District Court,
S. D. Alabama, S. D.
March 31, 1955.

Edward F. Reid, Frank J. Tipler, Jr., Andalusia, Ala., R. F. Adams (of McCorvey Turner, Rogers, Johnstone & Adams), Mobile, Ala., for plaintiff.

Keener T. Blackmarr, Asst. U. S. Atty., Mobile, Ala., for defendant.

THOMAS, District Judge.

This action arises out of an automobile accident which occurred on January 5, 1945, involving an army command car and a gasoline truck on U. S. Highway 29, approximately six miles east of Brewton, Alabama, said accident causing the death of the plaintiff's husband, John M. Blackmon, who was the driver of the gasoline truck. Suit was instituted pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., and Workmen's Compensation Act, Title 26, § 312, Code of Alabama, 1940, as amended, by Mrs. Annie Blackmon, as dependent widow of John M. Blackmon, deceased.

Findings of Fact

P.F.C. Raymond D. Willingham, a member of the United States Army, the driver of the command car, was stationed at a prisoner of war camp at Evergreen, Alabama. The prisoners were engaged in cutting logs for a lumber company a few miles east of Brewton. They were picked up and returned each day in the

lumber company's truck, and two guards in a command car were detailed to follow the truck and remain on guard during the day at the work site. On January 5, 1945, the two guards were Private Waters and P.F.C. Willingham, the latter being in charge. The previous night Willingham had liberty and returned to camp late from a drinking party. He was awakened on the morning of the 5th and informed of his guard detail. Prior to leaving the camp on this guard detail, Willingham informed his superior, Corporal Butal, that he did not feel able to go. Some argument ensued, the content of which is not clear, but in any event Corporal Butal told Waters to go with Willingham and that he (Willingham) "would be all right." When they departed the camp for the work site, some two to four prisoners of war were in the command car. These prisoners of war did not speak English, the guards understood no German; yet, clothed with this inability to communicate, the guards understood that the prisoners of war desired accommodations in the company truck, which accommodations were granted. Apparently the reason for this sought-for change was the manner of Willingham's driving. En route to the work site, Waters on at least one occasion grabbed the wheel in order to avoid a collision with an on-coming vehicle. Waters stated that there was an odor of alcohol in and about the command car, but he was uncertain from whence it came. Willingham had nothing to drink while in the company of Waters.

Upon arrival at the work site, Willingham became abusive going so far as to threaten to shoot the prisoners, which resulted in Waters' taking the gun of Willingham and removing the clip therefrom, this despite the fact that Willingham was Waters' superior. The lumber company's supervisor at the work site testified that it was obvious that Willingham was intoxicated. After remaining for an hour or so, Willingham informed Waters that he was going to Brewton to secure some medicine—he had been complaining of a severe headache. The accident occurred en route from the work site to Brewton.

At the time of the accident, the gasoline truck was traveling in an easterly direction and the command car in a westerly direction. The evidence establishes that the left front wheel of the command car collided with the left rear wheel of the gasoline truck; that there was a gash in the pavement 6.5 feet south of the center line of the highway which was made by the left front wheel of the command car, and tire marks from this point to the point where the command car came to rest; that the collision occurred due to the encroachment of the command car upon the easterly lane of travel, caused by Willingham's incompetence; and that the driver of the gasoline truck was not guilty of contributory negligence.

The deceased met his untimely death when he was trapped inside the burning gasoline truck, at which time both the deceased and his employer were subject to the Alabama Workmen's Compensation Act.

 Based upon the above evidence, I find that the proximate cause of the accident was the negligent entrusting to Willingham by his superior, acting within the line and scope of duty, a dangerous instrumentality (the command car), having actual or constructive knowledge that Willingham at that time was incompetent to drive.

### Conclusion of Law

 The driver's negligence was reasonably to be expected to follow the negligent entrusting of the vehicle to an incompetent driver; hence, the negligent use of the vehicle did not insulate the negligence inherent in the entrusting of the vehicle to a known incompetent driver so as to break the chain of causation, when the driver's negligence resulted from his incompetent condition. McGowin v. Howard, 251 Ala. 204, 36 So.2d 323.

### Damages

 Turning now to the damages, both the plaintiff and the deceased had

a life expectancy of twenty-six years. At the time of the accident, the deceased was earning $40 per week, and based upon the earnings of subsequent drivers for his employer, his average wage for the past ten years would have been approximately $50 per week.

Although mindful of the testimony of the plaintiff that the deceased gave her approximately 87½% of his income, it is also evident that such sum was used for general household expenses and would not be a proper index of the contribution by the deceased to the support of the plaintiff. The court finds that the contribution by the deceased to the support of the plaintiff was 50% of his income, or $25 per week. The present cash value of $1 per year for twenty-six years is $15.98, based upon the reasonable rate of 4%. There were also funeral expenses incurred in the amount of $346.

Based upon the above findings, the court assesses compensatory damages sustained by the plaintiff due to the death of the deceased in the amount of $21,120.

Judgment accordingly will be entered.