JOSEFA MELÉNDEZ ET AL., Plaintiffs and Respondents, *v.* THE COMMONWEALTH OF PUERTO RICO, Defendant and Petitioner.

No. 12521.   Submitted March 21, 1960.—Decided June 6, 1960.

*Hiram R. Cancio, Secretary of Justice (Francisco Espinosa, Jr., Acting Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice* and *Jorge Ruiz Rivera, Assistant Attorney General,* on the brief) and *Edgar S. Belaval, Assistant Attorney General,* for petitioner. *Lionel Fernández Méndez* and *Guillermo Cintrón Ayuso* for respondents.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court. ·

Catalino Jiménez Martínez died as a result of injuries received when he was run over by a pick-up on July 22, 1956 in insular highway No. 14, known at that time as "Temporary Detour" of barrio Monte Llano of Cayey, Puerto Rico. The said vehicle was owned by the United States Government and was assigned to the Puerto Rico National Guard. At the time of the accident the vehicle was driven by a member of the Puerto Rico National Guard in the discharge of his duties and

functions as such, the accident having occurred as a result of said driver's negligence.

Pursuant to the provisions of Act No. 104 of June 29, 1955 (Sess. Laws, p. 550) the heirs of Jiménez Martínez filed a suit for damages against the Commonwealth of Puerto Rico. The Superior Court granted the complaint and ordered the defendant to pay to the widow Josefa Meléndez the sum of $6,000 and $2,000 to each one of her three children, José, Catalina, (sic) and Ernestina Jiménez, without award of costs or attorney's fees.

The sole question raised by the Commonwealth in this proceeding is that it has not given its consent to be sued on the facts set forth in the complaint.[1] Its position is that those facts constitute the crime of involuntary manslaughter and that the clear purpose of Act No. 104 of 1955 is to make the Commonwealth not liable for criminal acts of its officers; that involuntary manslaughter is a crime against the person and that § 6 of said Act No. 104 does not authorize actions for damages against the Commonwealth for an act or omission of an officer, agent or employee constituting a crime against the person.[2]

The doctrine that the Commonwealth can not be sued without its consent is traditional. *Bonet* v. *Yabucoa*

---

[1] It is alleged in the complaint that the accident "was due solely and exclusively to the negligence, carelessness or unskilfulness of the defendant's agent and who at that moment was driving the afore-described vehicle at an excessive speed while the pavement was wet, without giving signal or alarm warning of any kind whatsoever and without taking the proper precautions to avoid the accident that he caused therein."

[2] Apart from this question of law which was dismissed by the trial court, the controversy was reduced to the negligence and the amount of the damages. The Commonwealth alleged that the accident was due to wanton negligence of Jiménez Martínez upon unexpectedly darting in front of the vehicle without giving the driver time to swerve and avoid the accident. The evidence was contradictory but the trial judge settled the conflict in favor of the plaintiffs. He further decided that the facts proven did not constitute the crime of involuntary manslaughter but that the preponderance of the evidence established that the accident was caused by the negligence of the vehicle's driver. The petitioner does not insist on this point, there only remaining for decision the aforesaid question of law.

*Sugar Co.*, 306 U. S. 505; *Valiente & Co.* v. *Cuevas, Com'r.*, 65 P.R.R. 169. By Act No. 76 of April 13, 1916 (Sess. Laws, p. 151) the People of Puerto Rico gave its consent to be sued in (1) actions for damages based upon contracts, and (2) actions to recover real or personal property or an interest therein. Said Act provided further that said actions for damages and for recovery of real property must be established within one and two years, respectively, after the cause of action was originated. It also provided as a requirement for the filing of the action that the plaintiff furnish a bond in the sum of $500, except on account of poverty. This Act was amended by Act No. 11 of April 18, 1928. (Sess. Laws, p. 130.) The amendment consisted in authorizing suits against the People of Puerto Rico in action for damages even when not based on contracts, and in increasing the bond to $2,000.

In 1955 the Legislature approved Act No. 104 of June 29 of that year, known as the "Act on Claims and Suits Against the Commonwealth."

Section 2 of the Act provides as follows:

"Section 2.—Authorization is hereby granted to sue the Commonwealth of Puerto Rico before the Court of First Instance of Puerto Rico for the causes set forth in the following actions:

"(a) Actions for damages to person or property up to the sum of $15,000 caused by a culpable or negligent act or omission, of any officer, agent, or employee of the Commonwealth, or of any other person acting in an official capacity within the scope of his duty, office, or employment.

"(b) Actions to recover real or personal property or an interest therein, with or without compensation for damages sustained by the said property or on account of income and profits therefrom, and for the survey of rural property.

"(c) Civil actions in which the amount claimed does not exceed $15,000 in principal and which are based on the Constitution, or on any law of Puerto Rico, or on any regulation of any department or division of the Commonwealth, or on any contract, express or tacit, with the Commonwealth." (Act No. 104 of 1955, p. 550.)

In its § 6 the Act establishes several exceptions to the authority granted to sue the Commonwealth, among them subdivision (d) which is the one pertinent in this case. This section provides:

"Section 6.—Nothing in this act authorizes actions for damages against the Commonwealth by reason of an act or omission of an officer, agent or employee:

"(a) . . . . . .

"(b) . . . . . .

"(c) . . . . . .

"(d) which constitutes assault, battery, or any other offense against the person, unlawful imprisonment, unlawful arrest, malicious persecution, slander, libel, defamation, misrepresentation, or imposture;"

It will be noted that Act No. 104 is broader with respect to the waiver of immunity of the Commonwealth to be sued, and it aims, as we shall see hereinafter, to terminate the undesirable situation that the Legislature would have to approve year after year special Acts authorizing suits against the Commonwealth.

We have already said that the theory of the Commonwealth is that since involuntary manslaughter is comprised in the Penal Code among the crimes against the person, said crime lies within the exception established in the above-quoted subdivision (d).

We disagree. In our opinion it was not the intention of the Legislature in approving said subdivision (d) to maintain the immunity of the Commonwealth against claims for damages caused by the reckless and negligent acts of its officers, agents or employees. What it had in mind rather was to maintain the immunity of the Commonwealth against suits originated by those wrongful acts committed deliberately or intentionally by its officers, agents or employees. And we already know that involuntary manslaughter is not one of those acts where, as in this case, death is caused "in the commission of a lawful act which might produce death, in an un-

lawful manner, or without due caution and circumspection"; in the event, of course, that the employee or agent of the Commonwealth had committed said offense in this case.[3] See § 203 of the Penal Code [33 L.P.R.A., § 635] and *People* v. *López*, 77 P.R.R. 573.

The Attorney General contends in his brief that the clear purpose of Act No. 104 is not to make the Commonwealth liable for criminal acts committed by its officers and that the federal courts have given this same interpretation to the Act authorizing suits against the United States of America known as the "Federal Tort Claims Act" and from which our Act was substantially copied.

However, neither the decisions cited,[4] nor the authorities that we have consulted support his contention. We have

---

[3] The record shows that the driver of the vehicle which ran over and killed Catalino Jiménez Martínez was not charged with the crime of involuntary manslaughter.

[4] The cases cited by the Attorney General are the following:

(*a*) *Moos* v. *United States*, 225 F.2d 705.

This case deals with an operation on a patient in a state institution without the patient's consent. Under the Minnesota law these acts constitute the crime of aggravated assault and battery. The express letter of the "Federal Tort Claims Act" excludes liability of the State arising out of assault and battery.

(*b*) *United States* v. *Hambleton*, 185 F.2d 564.

Damages were claimed for acts constituting assault, which is expressly excluded from the federal Act.

(*c*) *Wilcox* v. *United States*, 117 F. Supp. 119.

Damages were claimed arising out of assault and battery upon a patient of a state institution caused by another patient.

(*d*) *Panella* v. *United States*, 216 F.2d 622.

Damages were also claimed for the assault committed by a hospital patient and not by an employee. The case was remanded to the lower court to determine if there was negligence (lack of supervision) on the part of the hospital employees. The court held the same principle that if the assault is inflicted by an employee the state is not liable.

(*e*) *Stepp* v. *United States*, 207 F.2d 909.

This case dealt with a claim based on assault and battery upon using excessive force in making an arrest.

(*f*) *Morton* v. *United States*, 228 F.2d 431.

Damages were claimed for the improper detention and inadequate medical care to a prisoner who was mentally defective. It was decided that it involved the improper exercise of the discretionary functions of an officer, or of facts constituting assault, battery, false imprisonment or arrest,

found no decisions dismissing claims against the government on the basis of the exception of the Federal Act now under consideration, where the damages arise from negligent and unintentional acts of its employees. On the contrary in some cases the Government has been ordered to pay damages as a result of the death of a person caused by the negligence of the driver (government employee) in the operation of a motor vehicle. *Baker* v. *United States*, 159 F. Supp. 925; *Blackman* v. *United States*, 130 F. Supp. 498; *Graun* v. *United States*, 78 F. Supp. 840. See also, *United States* v. *Kennedy*, 230 F.2d 674; *Purcell* v. *United States*, 130 F. Supp. 882. Likewise the authorities hold that the intention of Congress was to preserve the immunity of the State for those acts committed deliberately or intentionally by its officers, agents or employees. Prosser On Torts (2d ed.), 773; *Tort Actions Against the Federal Government*, 47 Cal. L. Rev. 722; *Recent Cases*, 38 Minn. L. Rev. 890; Guillhorn & Lauer, *Federal Liability for Personal and Property Damages*, 29 N.Y.U.L. Rev. 1325; Hulen, *Suits on Tort Claims Against the United States*, 7 F.R.D. 689. See also, *Dalehite* v. *United States*, 346 U. S. 15, 97 L. Ed. 1427.

On the other hand the legislative history of Act No. 104 of 1955 does not show that the Legislature had the intention, in approving said Act, to exclude from the waiver of immunity those acts or omissions of the officers, agents and employees of the government, causing damages which in turn constituted a crime, such as involuntary manslaughter.

When the bill was reported in the House of Representatives the President of the Committee for Juridical Cases of said body, expressed himself as follows:

"It is known to my colleagues that year after year, in each one of the legislative sessions it is necessary to present specific

---

etc., which were encompassed within the exceptions of the statute to the waiver of immunity.

(*g*) *Tinkoff* v. *United States*, 211 F.2d 890.

Damages were claimed for the wrongful arrest of a person. The complaint was dismissed since it was also excluded from the statute.

legislation to authorize those persons who through my colleagues request authority to sue the Commonwealth. This legislation covers that situation and makes it unnecessary for the legislator to be concerned year after year about those cases which come to his knowledge and which require legislative approval."

Volume IV, Book III, p. 1990 of the Journal of Sessions of the Legislature of the Commonwealth of Puerto Rico.

As respondents correctly maintain, the legislative history of the years prior to 1955 shows that it was always permissible to sue the Commonwealth for such damages as were caused by the operation of motor vehicles by agents of the State who caused injuries or death, even though in causing death the agent of the State committed the crime of involuntary manslaughter.[5]   The real purpose of Act No. 104 would be thwarted if we decided that the State has not waived its immunity to be sued when its agents, through carelessness, negligence or lack of circumspection in driving a motor vehicle kill a person although such act constitutes in itself a crime of involuntary manslaughter and there would arise again the undesirable situation of keeping the lawmakers concerned year after year, about the approval of special legislation, which was precisely what Act No. 104 meant to avoid, because it is known, and we find no reasons to assume the contrary, that the Legislature would continue, as it did up to 1955, to give the consent of the State to be sued when its agents cause injuries or death in operation of motor vehicles.   At least, we known of no case in which prior to 1955 the Legislature refused to give such consent.   We do not believe that the

---

[5] Cases of death: Act No. 494 of April 29, 1946, (Sess. Laws, 1488); Act No. 336 of April 16, 1946 (Sess. Laws, p. 906); Act No. 231 of May 5, 1950 (Sess. Laws, p. 590); Act No. 415 of May 11, 1951 (Sess. Laws, p. 1100). Death by accident of another nature: Act No. 192 of May 2, 1952 (Sess. Laws, p. 408). Other Acts authorizing suits against the Commonwealth: Act No. 45 of April 18, 1940 (Sess. Laws, p. 386); Act No. 342 of May 10, 1947 (Sess. Laws, p. 590); Act No. 20 of April 13, 1948 (Sess. Laws, p. 40); Act No. 88 of May 5, 1948 (Sess. Laws, p. 198); Act No. 224 of May 5, 1950 (Sess. Laws, p. 574); Act No. 416 of May 11, 1951 (Sess. Laws, p. 1102).

Legislature had the intention, upon approving Act No. 104, to give the consent of the State to be sued if in an automobile accident, caused by the negligence of its agents, a person received serious but not mortal injuries—which is not a crime against the person—and at the same time to refuse its consent when as a result of those injuries the person dies, for the only reason that the acts committed by the agent of the State constitute in this last case the crime of involuntary manslaughter, which is a crime against the person.

In view of the foregoing we decide that the error assigned by the petitioner was not committed and consequently the judgment sought to be reviewed is affirmed.