## Browder, et al. v. City of Henderson.

(Decided January 17, 1919.)

### Appeal from Henderson Circuit Court.

1.  Municipal Corporations—Governmental Function—Management of Hospital.—In the care and management of its hospital the city is performing a public or government function, and is not liable for injuries due to the carelessness or neglect of its employees.
2.  Municipal Corporations—Remuneration from Outside Sources—Hospitals—Pay Patients.—The fact that certain of its patients pay for services rendered them, or that the institution receives money from other than public funds does not alter or change the rule of non-liability.

YEAMAN & YEAMAN and F. J. PENTECOST for appellants.

B. S. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Mrs. Rowena Browder and her husband, Thos. H. Browder, instituted this action seeking damages growing out of the negligence of the employes of the appellee in

the management of the City Hospital, it being claimed that she was admitted into the hospital as a patient, suffering with some nervous disease. or malady, and that about a week after she had entered said hospital the nurse in charge placed a hot water jug to her feet; that the water in said jug was hot or about the boiling point, and after placing said jug the nurse left the patient and was gone for some time; that because of her weakened condition the patient lapsed into a state of unconsciousness, or dozed off to sleep, and during said time the jug was uncovered and came in contact with her limbs, seriously and severely burning the flesh on both her lower limbs between her knees and feet, thereby seriously and permanently injuring her.

A demurrer was filed to this petition and sustained and an appeal has been taken to this court.

1. Municipal corporations have a dual capacity—one public and the other private. "The one class of its powers is of a public and general character, to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants or the general public. . . . In the former case its functions are political and governmental, and no liability attaches to it at common law, either for non-user or misuser of the power or for the acts or omissions on the part of its officers or the agents through whom such governmental functions are performed, or the servants employed by such agencies." 28 Cyc. 1257.

This court is committed to the rule that in the performance of these public or governmental duties a municipal corporation can not be made to respond in damages for the negligent act of its employes, but we have also held that this does not release the individual whose negligence has produced an injury from a suit at the instance of the person injured.

We have held that the city was not liable for the negligence of its employes in a number of instances, and as a matter of convenience we will mention some of them: elevator in city hall, Schwalk's Admr. v. City of Louisville, 135 Ky. 570; city prison, City of Bowling Green v. Rogers, 142 Ky. 558; workhouse, Braunstein v. City of Louisville, 146 Ky. 777; fireman, Greenwood v. City of Louisville, 13 Bush 226; O'Daly v. City of Louisville, 156 Ky. 815; policemen, Pollock's Admr. v. City of Louisville, 13 Bush 221; park employe, Prinz v. Board of Park

Commissioners, 127 Ky. 470; eruptive hospital, City of Lexington v. Batson's Admr., 118 Ky. 489; pesthouse, Twyman v. City of Frankfort, 117 Ky. 518; Having v. City of Covington, 78 S. W. 431; reform school, Williamson v. Louisville Reform School, 95 Ky. 850; schools, Clark, by, &c. v. City of Nicholasville, 27 Rep. 974; Ernst v. Town of West Covington, 116 Ky. 850; sewer construction, Smith's Admr. v. Com'rs of Sewerage, 146 Ky. 562; Johson's Admr. v. Com'rs of Sewerage, 160 Ky. 356; sprinkling of streets, Kippes v. City of Louisville, 140 Ky. 423; Maydwell v. City of Louisville, 116 Ky. 885; street cleaning, City of Louisville v. Carter, 142 Ky. 443; street construction, Board of Councilmen of Danville v. Fox, 142 Ky. 476; police judge, Hershberg v. City of Barbourville, 142 Ky. 60. See also, insane asylum, Leavell v. Western Ky. Asylum for Insane, 122 Ky. 213; Ketter's Admr. v. State Board of Control, &c., 131 Ky. 287; Board of Health, Allison v. Cash, 143 Ky. 689.

The appellee, City of Henderson, is a city of the third class, and among its statutory powers it is given the right "to establish and erect hospitals, almshouses, city prisons, workhouses, make regulations for the government thereof, and to acquire and hold land for the purpose, either within or beyond the boundaries of the city." Ky. Statutes, sec. 3290, clause 4. We see no reason to depart from the rule fixed and affirmed in the foregoing cases. In the management of its hospital the city is performing a governmental function just as much as in the operation of its city hall elevator, city prison, etc. Indeed, in the case of Allison v. Cash, 143 Ky. 689, the court held:

"A board of health is an instrumentality of government created for convenience and invested with such powers as will enable it to protect the general health of the people of the state, county or community over which it is given jurisdiction." In Kippes v. City of Louisville, *supra,* the exemption from liabilty was allowed because the sprinkling of streets is a health regulation.

In Twyman's Admr. v. Board of Council of Frankfort, 117 Ky. 518, suit was brought for damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of its police officers in wrongfully exposing plaintiff's intestate to inclement weather while he had smallpox by removing him from a comfortable home to a pesthouse, and the court uses this language:

"If the acts complained of in the petition were done by the appellee in the effort to protect the public health, which is a duty that appertains to the city in its public, and not in its corporate or private, capacity, it would seem that there can be no liability upon its part, even though such duty was negligently performed by those to whom its performance was entrusted."

And in Dillon on Municipal Corporations, section 1661, the author thus states: "The power or even duty on the part of a municipal corporation to make provision for the public health and for the care of the sick and destitute, appertains to it in its governmental or public, and not in its corporate, or as it is sometimes called, private capacity. And therefore where a city, under its charter, and the general law of the state, enacted to prevent the spread of contagious diseases, establishes a hospital, it is not responsible to persons injured by reason of the misconduct of its agents and employes therein. . . ."

In Ruling Case Law, vol. 19, section 400, the rule is thus stated: "Even if the officers employed by a municipal corporation to assist in the preservation of the public health inflict injury to persons or property by their negligence, the corporation is not liable, for the preservation of the public health is a purely public or governmental function. Thus it has been held that a city is not liable . . . for negligently caring for a person confined in its hospital."

In City of Richmond v. Long's Admr., 17 Gratt. (Va.) 378, we find the rule thus stated:

"Under such a state of facts to require the city to answer for the negligence or misconduct of the superintendent, matron, nurses or attendants of the hospital, would seem to me to subvert the fundamental doctrines of the law, as I understand and have sought to expound them. Analogy, I know, is a dangerous resort in argument; yet I cannot forbear saying that, if this recovery could be made, I do not perceive why, by parity of reason, the state should not be held liable, through its public functionaries, in civil actions at the suit of individuals, for losses or torts occurring in the management of its departments, and public institutions under its immediate control and supervision. It cannot be denied that in the municipal government of this city, the council occupies, towards its hospital, relations quite similar to those of the general assembly towards its asylums for the insane, the blind and deaf mutes."

Sherebourne v. Yuba County, 21 Calif. 113. Plaintiff in this case sought damages by reason of the unskilful treatment he received from the resident physician, and the insufficient and unwholesome food and other necessaries supplied him while in the county hospital as an indigent sick person. The lower court sustained a demurrer to the petition and this was affirmed on appeal.

Caroline Tollefson, Admx. v. City of Ottawa, 228 Ill. 134. The petition in this case alleged that the defendant, city, possessed, controlled and managed the hospital, and that plaintiff's decedent while sick was received by the defendant into said hospital as a patient and sought damages because of the negligent conduct on the part of defendant and its agents in caring for deceased during her sickness, which negligence resulted in the aggravation of her malady and later in her death. It was alleged in the third count that the hospital was maintained by defendant for revenue and profit. A demurrer to this petition was sustained and affirmed on appeal.

Thus it must be apparent that appellee cannot be held liable for the negligence complained of.

2. Counsel for appellants seek to make a distinction between this case and certain of the cases cited because the hospital maintained by the city of Henderson receives and cares for both free and pay patients, it being earnestly contended that because the city receives pay for certain services and attention that the hospital is not conducted, to use the expression of appellee's counsel, "as a purely public charity." But this court and other courts have held that the mere fact that the city may receive some pay or remuneration in the operation or maintenance of its public institutions does not take the case out of the general rule. This point was made in the case of Morgan v. Shelbyville, 121 S. W. 617, it being contended in that case that inasmuch as all fines imposed in the city court for violations of the ordinances of the city were by virtue of the statutes covered into the city treasury, rather than paid over to the state, the city was engaged in maintaining its guardhouse as a private enterprise for its especial benefit, and that in erecting and maintaining this guardhouse it was not engaged in the discharge of a public duty as an arm of the state. Quoting from Jones v. City of Corbin, 30 Rep. 374, 98 S. W. 1002, the court says:

"The maintenance of a municipal court and prison is in pursuance of the city's governmental functions, and in so doing it is but an arm of the state in upholding the public peace and safety. The principle is well established that municipal corporations are not liable either for the nonfeasance or malfeasance of their public officers in the discharge of their governmental functions."

In Bell v. City of Cincinnati, 80 Ohio St. 1; 88 N. E. 128, 23 L. R. A. (N. S.) 910, this same point was made, and the court rejected it, stating: "There is no evidence that one penny of profit was realized on the disposition it made of stone, if that be a matter of concern. In so far as the facts inform us, or fail to inform us, the receipts for stone sold would only part pay the expense of keeping and guarding the prisoners while engaged in the quarry, and we will hesitate to believe that the city was engaged in a commercial enterprise, while it may have been endeavoring, so far as possible, to make the workhouse self-sustaining. All prison labor, including that performed in the state penitentiary, is utilized to pay the cost of maintenance, and in so doing, the institution—the state—is not engaged in a commercial enterprise for profit."

Benton v. Boston City Hospital, 140 Mass. 13. Plaintiff had a sick child which had been in the hospital for some time, and on a visit to see said child, while leaving the hospital, the mother was injured through a defective stairway and brought suit for damages. It was shown that the city council appropriated a considerable sum of money for the maintenance of the hospital and this was supplemented by money received from certain pay patients, all of which went toward the maintenance of the hospital, and it was sought to hold the city liable for the negligence of the superintendent in permitting the steps to become defective and in a dangerous condition, but the court affirmed the judgment of the lower court in sustaining a demurrer to the petition.

The court has held that charitable or eleemosynary institutions are not liable for the negligence of their employes, and the fact that they receive pay from some of their patients does not alter the rule. Cook, Admr., et al. v. John H. Norton Memorial Infirmary, 180 Ky. 331; in this case the court says:

"An examination of the authorities has convinced us that a purely charitable institution, such as defendant's

hospital is described in the pleadings to be, is not amenable to its patients, although paid ones, for any damages which they may have sustained growing out of alleged negligence, although such negligence might consist in the violation by the hospital of some duty imposed either by an express or an implied contract. The cases dealing with the subject seem to treat the cause of action as one sounding in tort, although the liability, if any, was created by the negligent failure on the part of the hospital to observe some alleged contractual duty, which is analogous to the rule applied to common carriers in suits by their passengers who sustain contractual relations the one with the other, although the suit is generally treated as one sounding in tort.''

A kindred question was involved in the case of Corbin Y. M. C. A. v. Commonwealth, 181 Ky., 384, where it was sought to require that institution to procure a license to operate a restaurant, but it is held that under section 170 of the Constitution it was exempt from taxation, the court saying (quoting numerous authorities) :

. . . ''the exemption granted to such institutions of purely public charity, under the peculiar verbiage of our constitutional provision, includes everything that is embraced by the word 'institution,' and this, we are convinced, includes not only their property, but also necessarily all of their activities that are consistent with and in the furtherance of the purposes for which they were organized. . . . The fact that for the meals, lunches and soft drinks that are served in the restaurants charges are made, to both members and non-members of the organization, although the charges to the latter are possibly slightly in excess of those of the former, but without profit, merely emphasizes the purely public character of this branch of the service and does not in anywise alter its charitable quality, as has been frequently decided in this and other states.''

It would seem from the foregoing authorities that the fact that some of the patients in the hospital at Henderson are pay patients does not alter the rule and the appellee cannot be held for damages in this action. Therefore the judgment is affirmed.