Isabell Shaffer

*v.*

Monongalia General Hospital, a corporation

(CC 768)

Submitted September 7, 1950. Decided December 19, 1950.

164

*Kermit R. Mason,* for plaintiff.

*Jesse M. Jaco,* for defendant.

HAYMOND, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Monongalia County by the plaintiff, Isabell Shaffer, to recover from the defendant, Monongalia General Hospital, a corporation, damages for personal injuries which resulted from the alleged negligence of the defendant while the plaintiff was a patient for hire in its hospital on February 17, 1949.

To the declaration of the plaintiff, claiming damages of $25,000.00, the defendant filed a special plea which alleges that the defendant corporation and all property constituting its hospital are vested in the County Court of Monongalia County; that the hospital is controlled, managed and operated by a board of nine trustees appointed by the county court to serve without compensation; that the revenue derived from the hospital is required by law to be used to operate the hospital and as a reserve for its repair, maintenance and depreciation, and that only the excess revenue then remaining may be paid to the county court to be used by it for any lawful purpose; that the hospital is not maintained and operated for gain or profit; that the defendant corporation has no stockholders or members, except its trustees who have no pecuniary in-

terest in profits or losses of the hospital, and is a public corporation which is organized exclusively for governmental purposes and which exercises exclusively governmental functions; and that the defendant is not liable for the injuries mentioned and complained of in the declaration.

The plaintiff filed a demurrer and a special replication to the plea. The court overruled the demurrer and certified to this Court, upon the demurrer, these questions: (1) Whether the defendant, in the operation of its hospital, in the manner alleged in the plea, is engaged in the discharge of a governmental, or a proprietary, function; and (2) whether the defendant is liable for the torts of its agents committed in the performance of their duties.

The defendant, as now constituted, was created by a statute passed in 1943, Chapter 112, Acts of the Legislature, 1943, Regular Session, which reestablished an existing hospital authorized by Chapter 164, Acts of the Legislature, 1929, Regular Session. The present statute authorizes and empowers the County Court of Monongalia County to establish, equip and maintain, in that county, a hospital to be known as Monongalia General Hospital, and to use the buildings and the equipment of the previously established hospital. It declares that the cost of operating the hospital shall be provided for from its revenues but that the county court may contribute to the operating expenditures of the hospital from any funds in the custody of the court not otherwise appropriated. It also directs the county court to appoint a board of trustees of nine members which is authorized and empowered to control, manage and operate the hospital; prescribes the qualifications of the members of the board and defines its powers and duties; provides that the board shall be a corporation which may contract and be contracted with and sue and be sued; deals with the revenues derived from the operation of the hospital and other funds for use by it; and declares that title to all property constituting or belonging to the hospital shall be vested in the county court.

Section 10 of the act, relating to revenues and funds, provides that all revenues derived from the operation of the hospital shall be deposited in a separate account designated as the "Monongalia General Hospital Fund"; that out of that fund the board shall pay certain amounts for specified purposes, in this order: First, the amount of the reasonable expense of operation, repair and maintenance of the hospital; second, a sufficient amount of the balance then remaining for operation, repair and maintenance of the hospital, for an ensuing period of not less than twelve months, and for depreciation, which amount is required to be placed in a separate account as a reserve for operation, repair and maintenance; and third, the balance remaining after the payment of the two foregoing amounts may be paid by the board to the county court and may be used by it for any other lawful purpose. The section also requires the county court forthwith to pay into the hospital fund all existing funds held by the court or on deposit in any banking institution for the hospital or for its current operation, and to transfer to the hospital board all accounts receivable in favor of the hospital. Section 12 declares that the purpose of the act is to provide for efficient operation of the hospital and its prudent and economical management by the board, and to effectuate that purpose, vests wide discretion and adequate authority in the board.

The controlling question for decision is whether the defendant is a public corporation and, in the operation of the hospital, under the supervision of the trustees, is engaged in the performance of a governmental function. The plaintiff contends that in the operation of the hospital, under the statute, and in accepting and treating her as a patient for hire, the defendant was not engaged in the discharge of a governmental function, but acted in a proprietary capacity and is liable for the damages caused by the negligence of its agents and employees. The defendant insists that it is a public corporation, that in the operation of the hospital it was engaged in the performance of a governmental function, and that it is immune

from liability for the negligence of its officers, agents and employees.

It is obvious that the defendant is a public corporation. Its trustees were incorporated, and the hospital was established, by the statute. The title to the hospital property, by the terms of the statute, is vested in the County Court of Monongalia County, which holds the property of the county, a political subdivision of the State, for the benefit of the county, or its citizens and inhabitants, in trust for public purposes. *Hall's Safe and Lock Company* v. *Scites*, 38 W. Va. 691, 18 S. E 895; *Foley* v. *County Court of Doddridge County*, 54 W. Va. 16, 46 S. E. 246. See Code, 1931, 7-3-1.

The contention of the plaintiff, that the operation of the hospital by the defendant, when she, a paying patient, was injured, was for profit and in a proprietary capacity instead of in the performance of a governmental function, is not well founded. Neither the public character of the defendant nor the nature of its operation was changed or affected by the payment of dues or charges for the treatment which the plaintiff received as a patient. *The City of Richmond* v. *Long's Adm'rs.*, 17 Gratt. 375, 94 Am. Dec. 461; *Benton* v. *Trustees of the City Hospital of the City of Boston*, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436; *Browder* v. *City of Henderson*, 182 Ky. 771, 207 S. W. 479. In *The City of Richmond* v. *Long's Adm'rs.*, 17 Gratt. 375, 94 Am. Dec. 461, an insane slave, while a patient in a municipal hospital, through the alleged negligence of its agents, was permitted to escape and sustained injuries which resulted in his death. The city ordinance required the expense of patients in the hospital to be paid by them or their masters. The Court held that the operation of the hospital was a public function and that the city was not liable for the loss of the slave because of the negligence of its agents. In *Benton* v. *Trustees of the City Hospital of the City of Boston*, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436, a city hospital was operated by the trustees, who were incorporated, and the holding was that the

trustees were not liable for injuries caused by the negligence of their officers and agents. In the opinion the Court used this language: "But we think that this is a hospital maintained by the city, with such aid as may be derived from donations, and the sums received from paying patients, and that the trustees are in a sense managing agents only in maintaining the hospital, subject to the laws and to the ordinances of the city. * * *. The sums received from paying patients are by the ordinances to 'be credited to the account of the hospital,' and are, * * *, 'used in the support of the hospital.' * * *. The corporation of the Trustees of the City Hospital of the city of Boston has in fact no property. The St. of 1858, c. 113, is a special, and not a general statute, and it is permissive, and not imperative; but these distinctions would not render the city liable for negligence in the management of the hospital, as has been shown in *Tindley* v. *Salem,* 137 Mass. 171. The trustees are a body created for the performance of a duty, which, under the authority of the statute, the city of Boston has assumed for the benefit of the public, and from the performance of which no profit or advantage is received either by the trustees or the city. The trustees are no more liable for the negligence of their officers and agents than the city would be. The case is governed by the principles declared in *Hill* v. *Boston,* 122 Mass. 344." In *Browder* v. *City of Henderson,* 182 Ky. 771, 207 S. W. 479, the plaintiff, a patient in a municipal hospital, sued the city to recover damages for personal injuries alleged to have resulted from the negligence of its employees. The Court of Appeals of Kentucky held that the city was not liable for the negligent acts of its employees and in the opinion said: "Counsel for appellant seeks to make a distinction between this case and certain of the cases cited, because the hospital maintained by the city of Henderson receives and cares for both free and pay patients, * * *. But this court and other courts have held that the mere fact that the city may receive some pay or remuneration in the operation or maintenance of its public institutions does not take the case out of the general rule."

Numerous decisions by appellate courts in other jurisdictions hold that the payment of dues or charges by a patient in a hospital, operated or maintained as a public charity not conducted for profit but organized for the purpose of treating and caring for the poor and the sick and the income from which, whether derived from donations or pay patients, is devoted exclusively to its maintenance, does not affect the character of the institution as a public charity or the nature of the capacity in which it is operated. *Thornton* v. *Franklin Square House,* 200 Mass. 465, 86 N. E. 909, 22 L. R. A. (N.S.) 486; *Roosen* v. *Peter Bent Brigham Hospital,* 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563; *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, 21 Am. Rep. 529; *Williams* v. *Church Home for Females and Infirmary for the Sick,* 223 Ky. 355, 3 S. W. 2d 753, 62 A. L. R. 721; *Powers* v. *Massachusetts Homoeopathic Hospital,* 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372; *Weston* v. *Hospital of Saint Vincent of Paul,* 131 Va. 587, 107 S. E. 785, 23 A. L. R. 907; *Saint Vincent's Hospital* v. *Stine,* 195 Ind. 350, 144 N. E. 537, 33 A. L. R. 1361. In *Roberts* v. *Ohio Valley General Hospital,* 98 W. Va. 476, 127 S. E. 318, 42 A. L. R. 968, in which this Court held that it was incumbent upon a charitable hospital to use reasonable care in the selection and the retention of its physicians, nurses, and attendants and that for failure to do so it is liable for injuries received by its patient due to their incompetence, the opinion contains this statement: "The fact that one is a paying patient does not alter the rule. Such patient is the recipient of the donors' gratuity only in a lesser degree than one who makes no payment. The hospital building, with its equipment, management, and its great possibilities for the alleviation of suffering, was provided by charity. In using the organization made possible and supported by that charity, a paying patient, to that extent, benefits by the charity." The decisions just cited are analogous in principle, and are applicable to the status of the plaintiff as a paying patient in the case at bar.

The basic test in determining whether a public corporation, in its operations, is engaged in the discharge of a

governmental function or is acting in a proprietary capacity is whether the act performed is for the common benefit of the public or is for the special benefit or profit of the corporation. See *Hagerman* v. *City of Seattle,* 189 Wash. 694, 66 P. 2d 1152, 110 A. L. R. 1110. It is clear beyond question that the operation and the maintenance of its hospital by the defendant are for the common benefit of the public generally and are not for the special benefit or the private gain or profit of the defendant, the trustees, or the County Court of Monongalia County.

The plaintiff cites and relies upon the case of *Henderson* v. *Twin Falls County,* 56 Idaho 124, 50 P. 2d 597, 101 A. L. R. 1151, to sustain her contention that in treating her as a paying patient the defendant acted in a proprietary capacity, and in so acting is liable for the negligence of its employee. It appears in that case that the defendant, Twin Falls County, established and operated a county hospital, under a statute which authorized but did not require it to do so; that the hospital since its establishment was operated for the profit of the county; and that the greater proportion of its patients were paying patients. The Supreme Court of Idaho, by a three to two decision, held that in voluntarily establishing the hospital and in operating it for profit, the defendant acted in a proprietary and corporate capacity rather than in the performance of a governmental function, and was liable to a paying patient for personal injuries which resulted from the negligence of its employees. The statute by which the hospital of the defendant in the case at bar was established and its board of trustees declared to be a corporation is unlike the statute considered in the Idaho case. The statute now under consideration in effect requires the County Court of Monongalia County to establish and equip the hospital and forthwith to appoint a board of trustees which is declared to be a corporation; permits the county court to use the buildings and the equipment of a previously established hospital; directs the board to organize immediately; and authorizes the board to operate and manage the hospital; whereas the Idaho statute

authorized, but did not require, the county to acquire and maintain the hospital. That feature of the statute is emphasized in the Idaho case, and the opinion states "that by the enactment of the statute in question, the legislature did not intend to impose a mandatory duty upon boards of county commissioners to establish and operate county hospitals.", and that such establishment and operation were not a mandatory duty because such duty was not imposed by the statute. The Idaho case is distinguishable from the case at bar because of the different character of each statute involved and because the Idaho county hospital was admittedly operated for profit.

In cases involving liability of a hospital for the negligence of its officers and agents, the character of the particular institution, whether it is public, charitable, or private, is important for the reason that legal principles which apply to a public hospital are different from those applicable to a hospital operated and maintained for private gain or profit. 26 Am. Jur., Hospitals and Asylums, Section 12; *Fowler* v. *Norways Sanitorium,* 112 Ind. App. 347, 42 N. E. 2d 415. A hospital incorporated and conducted for private gain, or the benefit of its stockholders, is liable in damages to a patient for the negligent acts of its officers and agents. *Vaughan* v. *Memorial Hospital,* 100 W. Va. 290, 130 S. E., 481; *Jenkins* v. *Charleston General Hospital and Training School,* 90 W. Va. 230, 110 S. E. 560, 22 A. L. R. 323; *Hogan* v. *Clarksburg Hospital Company,* 63 W. Va. 84, 59 S. E. 943. In the *Jenkins* case this Court, in recognizing the distinction between a private hospital and a public hospital with respect to such liability, used this language: "The policy of the law forbids liability of a state or municipal hospital for negligence of its servants and physicians, it being a governmental agency."

The general rule which applies to a public hospital, supported by cases in numerous jurisdictions, is stated in 41 C. J. S., Hospitals, Section 8b, in these words: "In the absence of statutory provision to the contrary a hospital created and existing for purely governmental purposes and under the exclusive ownership and control of the

state or a governmental subdivision is not liable for the negligence or misconduct of its employees, or for personal injuries sustained by an employee, although a statute may declare it to be a corporation which may sue and be sued." In 26 Am. Jur., Hospitals and Asylums, Section 13, the text to the same effect is expressed in this language: "The general rule, in the absence of any statutory provision to the contrary, is that strictly public institutions created, owned, and controlled by the state or its subdivisions, such as state asylums for the insane, municipal and county hospitals, reformatories, etc., are not liable for the negligence of their agents. The doctrine of respondeat superior does not apply. They are held to be governmental agencies brought into being to aid in the performance of the public duty of protecting society from the individual unfortunate or incompetent in mind, body, or morals, and the rules applicable to municipal corporations and public officers generally are applied. This seems to be the rule whether the action is against the state, a county, a municipal corporation, or a hospital corporation created by the state to act is its agent in the case of those physically or mentally unwell. There seems to be no dissent from the rule wherever applied to a case in which an injury to the person is considered, whether the injured person is a stranger, a patient, an employee or servant, or an invitee on the hospital premises. * * *." See also Annotation I, 49 A. L. R. 379; *President and Trustees of the University of Louisville* v. *Metcalfe,* 1216 Ky. 339, 287 S. W. 945, 49 A. L. R. 375; *Sherbourne* v. *Yuba County,* 21 Cal. 113, 81 Am. Dec. 151; *Young* v. *City of Worcester,* 253 Mass. 481, 149 N. E. 204; *Benton* v. *Trustees of the City Hospital of the City of Boston,* 140 Mass., 13, 1 N. E. 836; *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, 21 Am. Rep. 529; *White* v. *Alabama Insane Hospital,* 138 Ala. 479, 35 So. 454; *Watson* v. *City of Atlanta,* 136 Ga. 370, 71 S. E. 664; *Butler* v. *Kansas City,* 97 Kan. 239, L. R. A. 1916D, 626, 155 P. 12, Ann. Cas. 1918D, 801; *Maia's Adm'r.* v. *Directors of Eastern State Hospital,* 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577; *The City of Richmond* v. *Long's Adm'rs.,* 17 Gratt. 375, 94 Am. Dec. 461;

*Lyle* v. *National Home for Disabled Volunteer Soldiers* (E. D. Tennessee), 170 Fed. 842.

The plaintiff insists that the language of Section 6 of the statute which declares that "Said hospital board shall be a corporation; and as such may contract and be contracted with, sue and be sued, plead and be impleaded, and shall have and use a common seal", authorizes this action against the defendant. The argument is not persuasive. The provision that the corporation may sue and be sued does not create a cause of action or impose liability for its negligence or confer upon a person injured by such negligence the right to maintain an action for damages against it. The authority conferred upon a public corporation by statute to sue and its statutory amenability to suit do not render it liable for acts for which no liability is imposed by law. See *Lyle* v. *National Home for Disabled Volunteer Soldiers,* (E. D. Tennessee), 170 Fed. 842; *Maia's Adm'r.* v. *Directors of Eastern State Hospital,* 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577; 41 C. J. S., Hospitals, Section 8b. In *Miller Supply Company* v. *State Board of Control,* 72 W. Va. 524, 78 S. E. 672, in discussing a statute creating the State Board of Control and providing that it may sue and be sued, this Court said: "The State Board of Control is a direct governmental agency of the state. True, the statute creating that board made it a corporation. * * *. Further true, the statute says it may sue and be sued. It may be that by appropriate process some mere ministerial duty of the board may be controlled. This we do not decide, for the question is not now before us." As stated in that case, so it may be said in this action, that the question whether the defendant, as a public corporation, under the statute, may sue or be sued with respect to other acts which it may be authorized to perform or for which it may be liable at law or in equity, is not here involved and therefore is not now decided. Certain it is, however, that the provision of the statute that the board may sue and be sued does not render it liable for the negligent acts of its agents in the operation of its hospital for the reason that no liability is imposed by law for any of its acts of that character.

For the reasons stated, and under the authorities cited and applied, the action of the circuit court in overruling the demurrer to the special plea was correct and its ruling is affirmed.

*Ruling affirmed.*