IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2021 TERM

**FILED**
**March 23, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 20-0600

_____

STATE OF WEST VIRGINIA EX REL.
GRANT COUNTY COMMISSION,
Petitioner

V.

HONORABLE LYNN A. NELSON,
JUDGE OF THE CIRCUIT COURT OF GRANT COUNTY, WEST VIRGINIA;
KIMBERLY LINVILLE; ROBERT "BOB" MILVET; AND
THE BOARD OF TRUSTEES OF GRANT MEMORIAL HOSPITAL TRUST
FOUNDATION, INC.,
Respondents

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

AND

Appeal from the Circuit Court of Grant County
The Honorable Lynn Nelson, Judge
Civil Action No. 20-C-8

REVERSED AND REMANDED

_____

Submitted: January 13, 2021
Filed: March 22, 2021

Peter G. Zurbuch
Jeffrey S. Zurbuch
Busch, Zurbuch & Thompson, PLLC
Elkins, West Virginia
Attorneys for Petitioner

G. Isaac Sponaugle, III
SPONAUGLE & SPONAUGLE
ATTORNEYS AT LAW
Franklin, West Virginia

Jane E. Peak
Allan N. Karlin & Associates, PLLC
Morgantown, West Virginia
Attorneys for Respondent,
Kimberly Linville

Wendy G. Adkins
Jackson Kelly PLLC
Morgantown, West Virginia

Justin M. Harrison
Jackson Kelly PLLC
Charleston, West Virginia
Attorneys for Respondents,
Grant Memorial Hospital and
Robert "Bob" Milvet

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE WALKER dissents and reserves the right to file a dissenting opinion.**

**JUSTICE WOOTON concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  *W. Va. Code*, 53-1-1."  Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997).

3.      For purposes of the Whistle-Blower Law and the Human Rights Act, a county commission, which owns a hospital pursuant to West Virginia Code section 7-3-14, is not the employer of individuals who work at the hospital.

4.      A county commission is not a health care entity under the Patient Safety Act merely because the county commission owns a hospital pursuant to West Virginia Code section 7-3-14 and does not otherwise provide health care services.

5.      Under Rule 12 of the West Virginia Rules of Civil Procedure, a circuit court's denial of a motion to dismiss a complaint that is predicated on the statutory immunity conferred by the Governmental Tort Claims and Insurance Reform Act is an interlocutory ruling that is subject to immediate appeal under the "collateral order" doctrine.

**Jenkins, Chief Justice:**

The Petitioner, Grant County Commission ("the Commission"), seeks review of an order entered by the Circuit Court of Grant County on July 29, 2020, denying the Commission's motion to dismiss causes of action asserted against the Commission. [1] The instant litigation began when the Respondent, Kimberly Linville ("Ms. Linville"), filed a complaint in which she sought to recover damages resulting from the termination of her employment as the Chief Nursing Officer at Grant Memorial Hospital ("the Hospital"). In response, the Commission filed a motion to dismiss the complaint wherein it argued that it was not a proper party as it was neither Ms. Linville's employer, nor was it a health care entity. The Commission also asserted that it should have been afforded immunity pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code sections 29-12A-1 to -18. The motion to dismiss was denied.

In this proceeding, the Commission presents two separate questions for this Court to decide: one is presented as a petition for writ of prohibition and the other is presented as an appeal pursuant to the collateral order doctrine. First, the Commission requests that this Court prohibit the circuit court from enforcing its order denying the Commission's motion to dismiss because "the circuit court exceeded its legitimate powers and erred as a matter of law . . . by failing to find that the Commission was not the employer

---

[1] Counsel for Respondents, Grant Memorial Hospital and Robert "Bob" Milvet, filed a Summary Response in which they stated that "[c]onsistent with its position taken below concerning the motion to dismiss," the Hospital and CEO Milvet "do not join or oppose" the current petition and appeal.

1

of Ms. Linville under the Whistle-Blower Law and the Human Rights Act, or [that the Commission was not] a health care entity under the Patient Safety Act." The Commission also appeals from the circuit court's order pursuant to the collateral order doctrine and assigns as error the circuit court's "fail[ure] to find that the Commission is immune, pursuant to the Governmental Tort Claims and Insurance Reform Act, [from Ms. Linville's] claims [that the Commission committed] . . . intentional acts."

Having considered the briefs submitted to the Court, the appendix record, the parties' oral arguments, and the applicable legal authority, we find that the Commission is not the employer of Ms. Linville and therefore is an improper defendant in this case. In denying the motion to dismiss, the circuit court committed clear legal error. Therefore, we grant the requested writ of prohibition. We further find that the circuit court erred by not affording the Commission immunity from Ms. Linville's intentional tort claim, and so we reverse the circuit court's order.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The Hospital is a not-for-profit hospital located in Petersburg, Grant County, West Virginia. Pursuant to West Virginia Code sections 7-3-14 (eff. 1981) and 7-3-15 (eff. 1986), the Hospital is owned by the Commission and operated by a Board of Trustees.[2]

---

[2] West Virginia Code section 7-3-14 provides, in part, that the "commission of any county is hereby authorized and empowered to acquire by purchase or construction

Ms. Linville was hired by the Hospital in 1997, and then, in 2011, she became the Chief Nursing Officer. As the Chief Nursing Officer, she had direct oversight of six nursing units, as well as the lab, radiology, and therapy departments. Ms. Linville reported to the Chief Executive Officer ("CEO") of the Hospital. On August 29, 2018, the Respondent Robert "Bob" Milvet ("CEO Milvet") was hired as the Hospital's new CEO.

During the time that Ms. Linville worked with CEO Milvet she frequently expressed to her superiors her concerns regarding his behavior within the hospital. Specifically, Ms. Linville alleges that CEO Milvet's actions were harassing and inappropriate and created a hostile working environment. Further, she contends that CEO Milvet engaged in an improper relationship with an employee, and that this relationship was having an adverse effect on employees of the Hospital, as well as on patient safety. Ms. Linville further made complaints to CEO Milvet and the Chief Financial Officer about "how finances were being handled at [the Hospital] after cash flow issues caused bills not to be paid and a vendor to hold up delivery of needed medical supplies." She also claims that she expressed concerns about CEO Milvet's alleged treatment of other employees and was critical of his actions outside of the workplace. Ms. Linville contends that CEO Milvet terminated her employment at the Hospital in retaliation for her complaints.

---

and to thereafter own, equip, furnish, operate, lease, improve and extend a public hospital, clinic, long-term care facility and other related facilities, with all appurtenances, including the necessary real estate as a site therefor." Further, West Virginia Code section 7-3-15 provides that the "administration and management of any county hospital . . . shall be vested in a board of trustees."

Ms. Linville filed a complaint on April 27, 2020, in which she sought to recover damages resulting from the termination of her employment. In the complaint, she named three defendants: CEO Milvet; the Board of Trustees of Grant Memorial Hospital Trust Foundation, Inc., otherwise known as Grant Memorial Hospital ("the Hospital"); and the Commission. Ms. Linville asserted four causes of action against these defendants: (1) discrimination and/or retaliation brought pursuant to the Whistle-Blower Law, West Virginia Code sections 6C-1-1 to -8; (2) retaliation brought pursuant to the Human Rights Act, West Virginia Code sections 5-11-1 to -20; (3) discrimination and/or retaliation brought pursuant to the Patient Safety Act, West Virginia Code sections 16-39-1 to -7; and (4) intentional infliction of emotional distress.

On May 18, 2020, the Commission filed a motion to dismiss the complaint. Pertaining to the first two counts of the complaint, the Commission argued that it could not be liable to Ms. Linville under the Whistle-Blower Law or Human Rights Act because it was not the employer of Ms. Linville, as that term is defined in both statutes. Similarly, the Commission also sought dismissal of the Patient Safety Act count on the basis that it was not a health care entity as defined by that Act. Lastly, the Commission argued that it was immune from Ms. Linville's intentional tort claims under the Governmental Tort Claims and Insurance Reform Act, West Virginia Code sections 29-12A-1 to -18.

On July 9, 2020, a hearing on the motion to dismiss was held before the circuit court. Ms. Linville did not file a response in opposition. Upon consideration of the

4

arguments of counsel, the circuit court denied the motion in an order dated July 29, 2020. This petition for writ of prohibition and appeal followed.

## II.

## STANDARD OF REVIEW

This case presents a combined petition for writ of prohibition under this Court's original jurisdiction and appeal pursuant to the collateral order doctrine seeking review of the circuit court's order denying the Commission's motion to dismiss Ms. Linville's complaint. These two distinct proceedings require different standards of review. Accordingly, we will discuss the standard of review in conjunction with our discussion of each proceeding.

## III.

## DISCUSSION

We first will address the petition for writ of prohibition and then we will address the appeal. All of the issues raised by the Commission, however, pertain to the circuit court's interpretation and application of statutory law. Therefore, our decision of this case is guided by the rules of statutory construction. When examining a statute to determine its meaning, this Court held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Further, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will

5

not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Accordingly, with these standards in mind, we now address the Commission's first request for relief: a petition for writ of prohibition.

### *A. Writ of Prohibition*

The Commission seeks an extraordinary writ because it contends the Circuit Court of Grant County committed clear legal error in denying its motion to dismiss. In Syllabus point 2 of *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977), we held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." When a trial court is not acting in excess of its jurisdiction, this Court will, in the exercise of its discretion, use prohibition

> to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014).

6

When considering a petition for writ of prohibition, this Court is guided by the following:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997). "In determining the third factor, the existence of clear error as a matter of law, we will employ a *de novo* standard of review, as in matters in which purely legal issues are at issue." *State ex rel. Gessler v. Mazzone*, 212 W. Va. 368, 372, 572 S.E.2d 891, 895 (2002). With these standards in mind, we now examine the Commission's request for a writ of prohibition.

The Commission maintains that it is an improper defendant because it was not Ms. Linville's employer and it was not a health care entity as those terms are defined in the statutes at issue. The Commission avers that it *only owns* the Hospital and that the Hospital is a public corporation. As such, the Commission contends that the Hospital's

Board of Trustees was vested with the right to hire and terminate hospital employees, and it was the Board of Trustees, not the Commission, that was Ms. Linville's employer. Therefore, the Commission argues that the Whistle-Blower Law and the Human Rights Act claims against it must be dismissed. Similarly, the Commission asserts that it is not a health care entity and therefore, it is not subject to the Patient Safety Act. Accordingly, the Commission argues that this claim should have been dismissed as well.

Ms. Linville responds to this argument and contends that the Commission can be held vicariously liable for the actions of the Hospital and CEO Milvet pursuant to agency law. More specifically, Ms. Linville argues that because the Commission created the Hospital and has exclusive appointment power of the Hospital's Board of Trustees, then the Commission is the principal to its agents, namely, the Board of Trustees and CEO Milvet.

**1. Violation of the Whistle-Blower Law and Human Rights Act.** The Commission first asserts that the circuit court should have dismissed Ms. Linville's complaint because the Commission was not her employer, as defined in both the Whistle-Blower Law and Human Rights Act, and her claims under those statutes were improperly asserted. The Whistle-Blower Law makes it unlawful for an employer to retaliate against

an employee for making a report of wrongdoing by his or her supervisor. West Virginia Code section 6C-1-3(a) (eff. 1988)[3] provides that

> [n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

Further, the Whistle-Blower Law defines "employer" as "a person supervising one or more employees, including the employee in question, a superior of that supervisor, or an agent of a public body." W. Va. Code § 6C-1-2(c) (eff. 1988).

Similarly, the Human Rights Act also makes it unlawful for an employer to discriminate or retaliate against employees regarding their employment opportunities. *See* W. Va. Code § 5-11-9(1) (eff. 2016) ("It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the State of West Virginia or its agencies or political subdivisions . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled."). The Human Rights Act defines

---

[3] West Virginia Code section 6C-1-3 was amended by the Legislature in 2020, but no changes were made that affect this Opinion.

"employer" as the "state, or any political subdivision thereof, and any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d) (eff. 1998).

Here, in denying the Commission's motion to dismiss, the circuit court reasoned that the Commission could be held vicariously liable for the conduct of the Hospital and CEO Milvet by virtue of the fact that the Commission created and owns the Hospital pursuant to West Virginia Code section 7-3-14, and has appointment power of the Hospital's Board of Trustees pursuant to West Virginia Code section 7-3-15. We disagree.

This Court has stated that "[i]t is always incumbent upon one who asserts vicarious liability to make a prima facia showing of the existence of the relation of master and servant or principal and agent or employer and employee." *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d. 218, 222 (1976). In the instant case, Ms. Linville fails to make a prima facie showing. To support her vicarious liability argument, Ms. Linville provides nothing more than a conclusory statement that the Commission was the "principal" to its "agent," the Hospital and/or the Board of Trustees, because it "is the head legal governing body that is statutor[ily] bound to appoint and issue revenue bonds for the legal entity of [the Hospital]." *See* W. Va. Code § 7-3-14 (authorizes county commissions to issue revenue bonds). These statutes do not, however, grant the Commission any control over the employment practices of the Hospital or Board of Trustees. Instead, West Virginia

10

Code section 7-3-15 vests all employment, administration, and management decisions in the Board of Trustees. Therefore, Ms. Linville has not demonstrated the existence of an alleged principal-agent relationship between the Commission and the Board of Trustees and CEO, and therefore, her vicarious liability argument must fail.

By statute, the Commission—although owning the Hospital—is not the employer of Ms. Linville. Pursuant to West Virginia Code section 7-3-14, county commissions are "authorized and empowered to acquire by purchase or construction and to thereafter *own*, equip, furnish, operate, lease, improve and extend a public hospital, clinic, long-term care facility and other related facilities, with all appurtenances, including the necessary real estate as a site therefor." (Emphasis added). However, the administration and management of a county public hospital, including decisions regarding the employment of hospital employees, is vested with a board of trustees.

> The administration and management of any county public hospital, clinic, long-term care facility or other related facility acquired, equipped, furnished, improved or extended under section fourteen of this article shall be vested in a board of trustees, consisting of not less than five members appointed by the county [commission]. . . .
>
> *Such board of trustees shall provide for the employment of and shall fix the compensation for and remove at pleasure all professional, technical and other employees, skilled or unskilled, as it may deem necessary for the operation and maintenance of the hospital,* clinic, long-term care facility or other related facility; and disbursement of funds in such operation and maintenance shall be made only upon order and approval of such board. The board of trustees shall make all rules and regulations governing its meetings and the operation

11

of the hospital, clinic, long-term care facility or other related facility.

W. Va. Code § 7-3-15 (emphasis added). Further, this Court has stated that public hospitals created pursuant to West Virginia Code sections 7-3-14 and 7-3-15 are public corporations created for the benefit of the county and its citizens. *See generally Shaffer v. Monongalia Gen. Hosp.*, 135 W. Va. 163, 62 S.E.2d 795 (1950).

As stated above, while the Commission has the power to acquire, construct, and own a hospital, this State's law is clear that the administration and management of a county public hospital is vested with a hospital board of trustees, not a county commission. Moreover, such hospital administration and management authority also specifically includes the power to make employment decisions regarding the hospital's employees. Therefore, as established by West Virginia Code sections 7-3-14 and 7-3-15, the Commission has no authority to make decisions regarding the Hospital's employees and, thus, is not the employer of Ms. Linville.[4] Therefore, for purposes of the Whistle-Blower

---

[4] As we noted above, the Commission does not meet the definition of employer as defined in the Whistle-Blower Law or the Human Rights Act. However, we also acknowledge that, in addition to the employer liability set forth in West Virginia Code section 5-11-9, the Act also contains a provision at West Virginia Code section 5-11-9(7), listing the following unlawful discriminatory practices:

> (7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:
>
>   (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass,

12

Law and the Human Rights Act, we hold that a county commission, which owns a hospital pursuant to West Virginia Code section 7-3-14, is not the employer of individuals who work at the hospital.[5] Thus, in the case *sub judice*, pursuant to West Virginia Code sections

---

degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;

(B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or

(C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

Under the Human Rights Act, a "person" is defined as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va. Code § 5-11-3(a).

In the case *sub judice*, despite briefly mentioning the "person" designation in her complaint, Ms. Linville failed to argue that even if not a statutory "employer," the Commission is nonetheless a "person" subject to liability under the Act. Therefore, any such argument is deemed waived. *See* Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). However, even assuming, arguendo, that the Commission definitionally qualifies as a "person" under the Act—an issue which this Court does not reach—it is clear that the retaliation alleged with respect to the Commission in Ms. Linville's complaint constitutes an intentional act from which a political subdivision is immune under the Tort Claims Act. *See Subsection B., infra.*

[5] This opinion should not be construed to imply that county commissions are immune or exempt from liability under the Whistle-Blower Law or the Human Rights Act

13

7-3-14 and 7-3-15, and the specific facts of this case, the Commission is not Ms. Linville's employer and therefore, is not subject to these statutes in the instant matter.

Because the Whistle-Blower Law and the Human Rights Act vest an employee with the right to file claims against his or her employer for violations of these provisions, and because the Commission is not Ms. Linville's employer, the circuit court's denial of the Commission's motion to dismiss on the grounds that such claims were improperly asserted against it because it was not Ms. Linville's employer was clearly erroneous. Additionally, the circuit court further erred because Ms. Linville failed to put forth a prima facie showing that a principal-agent relationship existed between the Commission and the Board of Trustees and CEO. Therefore, Ms. Linville cannot sustain a vicarious liability argument against the Commission.

**2. Violations of the Patient Safety Act.** The Commission also argues that the circuit court should have dismissed Ms. Linville's complaint because the Commission is not a health care entity, and, thus, Ms. Linville's Patient Safety Act claim was improperly asserted against the Commission. The Patient Safety Act was established to prohibit discrimination and retaliation against a health care worker who makes a "good faith report, or [who are] about to report, verbally or in writing, to the health care entity or appropriate

in all circumstances. In the current case, because the Commission is not the employer of the employee making claims, it cannot be held liable under these facts.

14

authority an instance of wrongdoing or waste." W. Va. Code § 16-39-4 (eff. 2001). The Act also provides that

> [a]ny health care worker who believes that he or she has been retaliated or discriminated against in violation of section four of this article may file a civil action in any court of competent jurisdiction against the *health care entity* and the person believed to have violated section four of this article.

*Id.* at § 16-39-6(a) (eff. 2001) (emphasis added). A health care entity is defined as "a health care facility, such as a hospital, clinic, nursing facility, or other provider of health care services." *Id.* at § 16-39-3(6) (eff. 2001).

In the case *sub judice*, Ms. Linville's complaint failed to demonstrate that the Commission was a health care entity as defined in the Patient Safety Act because the complaint failed to allege or establish that the Commission was providing "health care services." The Patient Safety Act allows Ms. Linville, a health care worker and an employee of the Hospital, to file a civil action against a *health care entity*, not against a county commission that does not provide "health care services." *Id.* This Court now holds that, a county commission is not a health care entity under the Patient Safety Act merely because the county commission owns a hospital pursuant to West Virginia Code section 7-3-14 and does not otherwise provide health care services. As such, because it is not a health care entity and does not otherwise provide health care services, the Commission cannot be held liable to Ms. Linville for her claims under the Patient Safety Act, and the circuit court's denial of the Commission's motion to dismiss on this basis was clearly erroneous.

15

### B. *Appeal Pursuant to the Collateral Order Doctrine*

Although the Commission primarily seeks extraordinary relief from this Court, the Commission also appeals from the circuit court's order pursuant to the collateral order doctrine. In this regard, the Commission argues that the circuit court erred by denying its motion to dismiss Ms. Linville's claim against it for intentional infliction of emotional distress, contending that it is immune from liability pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code sections 29-12A-1 to -18 ("Tort Claims Act"). Further, the Commission asserts that there are no claims of negligence that could potentially survive this grant of immunity afforded to it.

We have held that "[u]nder W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." Syl. pt. 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). However, this Court also has recognized exceptions to this rule. One

> exception [to the rule of finality] referred to as the "collateral order" doctrine, which was established by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949), may be applied to allow appeal of an interlocutory order when three factors are met: "An interlocutory order would be subject to appeal under [the collateral order] doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566

16

n.2, 401 S.E.2d 908, 912 n. 2 (1991) (internal quotations and citation omitted).  *See also Robinson v Pack*, 223 W. Va. 828, 679 S.E.2d 660[(2009)] (applying three-part collateral order doctrine to circuit court's denial of summary judgment on issue of qualified immunity and finding order immediately appealable).

*Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 523, 745 S.E.2d 556, 561 (2013).  This Court has previously determined that the denial of a motion to dismiss based on qualified immunity is immediately appealable.  *See* Syl. pt. 1, *W. Va. Bd. of Ed. v. Marple*, 236 W. Va. 654. 783 S.E.2d 75 (2015) ("A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine.").

However, we have not made this determination with respect to statutory immunity.  *See, e.g.*, *Coleman v. Sopher*, 194 W. Va. 90, 96 n.7, 459 S.E.2d 367, 373 n.7 (1995) ("Although the issue of statutory immunity could conceivably qualify [for immediate appeal under the collateral order doctrine], we are reluctant to invoke this doctrine in a case where there has been no request to do so and in light of our ironclad rule against piecemeal appeals.").  Because the Commission has specifically requested it in the case *sub judice*, we will proceed to analyze the elements required for application of the collateral order doctrine in the context of statutory immunity.

Under the first factor of the collateral order doctrine, the ruling at issue must be conclusive.  Here, we have the denial of a motion to dismiss where the Commission

17

asserted its statutorily immune from suit. Because a ruling denying the availability of statutory immunity fully resolves the issue of a litigant's obligation to participate in the litigation, the first factor is easily met.

The second prong asks us to determine whether the court's ruling resolves a significant issue separate from the merits. This Court found in *Robinson* that "qualified immunity is a pure legal determination that is made independent of the plaintiff's averments." 223 W. Va. at 833, 679 S.E.2d at 665. In the case *sub judice*, it is clear that examining the issue of immunity is separate from analyzing the merits of Ms. Linville's claims. Therefore, the second prong is met.

Finally, the third factor of the collateral order doctrine requires this Court to examine whether the lower court's ruling, regarding the Commission's claim of statutory immunity, is effectively unreviewable on appeal. With respect to a lower court's immunity ruling, we have said that

> [p]ostponing review of a ruling denying immunity to the post-trial stage is fruitless, as the United States Supreme Court reasoned in *Mitchell*, because the underlying objective in any immunity determination (absolute or qualified) is immunity from suit. 472 U.S. at 526-27, 105 S. Ct. 2806[, 86 L. Ed. 2d 411]; *see also Gray-Hopkins v. Prince George's County, Md.*, 309 F.3d 224, 229 (4th Cir. 2002) ("Because qualified immunity is an immunity from having to litigate, as contrasted with an immunity from liability, it is effectively lost if a case is erroneously permitted to go to trial.") (omitting internal citation); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (observing that denial of qualified immunity defense "subjects the [government] official to the burdens of pretrial

> matters" and opining that "some of the rights inherent in a qualified immunity defense are [consequently] lost"). Traditional appellate review of a qualified immunity ruling cannot achieve the intended goal of an immunity ruling: "the right not to be subject to the burden of trial." *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658.

*Robinson*, 223 W. Va. at 834, 679 S.E.2d at 665. In this case, the claim of immunity asserted by the Commission is immunity from suit pursuant to the Tort Claims Act. As is clear from our decision in *Robinson*, the third factor of the collateral order doctrine is easily met herein based upon our caselaw finding that similar immunity determinations are effectively unreviewable on appeal. *See id.* at 149 n.13, 479 S.E.2d 649 at 659 n.13 ("An assertion of qualified or absolute immunity should be heard and resolved prior to any trial because, if the claim of immunity is proper and valid, the very thing from which the defendant is immune—a trial—will absent a pretrial ruling occur and cannot be remedied by a later appeal.").

Based on the foregoing analysis, we now hold that under Rule 12 of the West Virginia Rules of Civil Procedure, a circuit court's denial of a motion to dismiss a complaint that is predicated on the statutory immunity conferred by the Governmental Tort Claims and Insurance Reform Act is an interlocutory ruling that is subject to immediate appeal under the "collateral order" doctrine. Accordingly, the Commission's appeal from the circuit court's order denying its claim of immunity under the Tort Claims Act is properly before this Court. As such, we will proceed to determine whether the circuit court erred in denying the Commission's motion to dismiss on the issue of statutory immunity.

19

Here, the Commission contends that it is immune, pursuant to the Tort Claims Act, for claims of intentional acts including discrimination, retaliation, and wrongful termination of Ms. Linville by CEO Milvet and the Hospital. Ms. Linville acknowledges that the Commission can assert protections under the Tort Claims Act; however, she argues that this provision does not destroy the principal-agent relationship between the Commission and the Hospital and CEO Milvet. As such, Ms. Linville contends that, despite its immunity, the Commission can still be found vicariously liable for the intentional acts of the Hospital and CEO Milvet.

"Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all." *Hutchison v. City of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996). Pursuant to the Tort Claims Act's definitions, the Commission is a "political subdivision" within the meaning of the Act. *See* W. Va. Code § 29-12A-3(c) (eff. 1986) (defining "political subdivision" as including "any county commission"). Furthermore, West Virginia Code section 29-12A-4(b)(1) (eff. 1986) grants immunity from suit to political subdivisions, such as the Commission, and strips it only in certain enumerated circumstances as contained in West Virginia Code section 29-12-4(c)(1):

> Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function: Provided, That this article shall not

20

> restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies.

As further clarified in *Zirkle v. Elkins Road Public Service District.*, 221 W. Va. 409, 414, 655 S.E.2d 155, 160 (2007) (per curiam), "[o]nly claims of negligence specified in W. Va. Code § 29-12A-4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code § 29-12A-4(b)(1)."

The specific cause of action in this appeal is an allegation of intentional infliction of emotional distress. This Court has recognized that in creating the general grant of immunity contained in West Virginia Code section 29-12A-(4)(b)(l) "the Legislature did not distinguish between intentional or unintentional acts, but instead used the term 'any' as an adjective modifying 'act or omission.'" *Zirkle*, 221 W. Va. at 414, 655 S.E.2d at 160. This Court has stated that, while political subdivisions may be liable for certain claims for negligence, "claims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(l)." *Zirkle*, 221 W. Va. at 414, 655 S.E.2d at 160. *Accord Mallamo v. Town of Rivesville*, 197 W. Va. 616, 477 S.E.2d 525 (1996) (finding town had no liability where police chief allegedly committed conspiracy because conspiracy is an intentional act, not a negligent one).

Accordingly, we conclude that the Commission is entitled to immunity under the Tort Claims Act for Ms. Linville's claim of intentional infliction of emotional distress,

21

given the immunity afforded to political subdivisions. As such, the Commission's motion to dismiss should have been granted, and the circuit court erred by ruling to the contrary.

## IV.

## CONCLUSION

For the reasons set forth above, we conclude that the Circuit Court of Grant County clearly erred when it denied the Commission's motion to dismiss Ms. Linville's complaint because the Commission is not a proper defendant to the statutory claims asserted by Ms. Linville. Therefore, we grant the requested writ of prohibition. Furthermore, we conclude that the Commission is immune from suit for Ms. Linville's intentional tort claim, and because the circuit court erred in ruling otherwise, the order must be reversed. In summary, we grant the requested writ and reverse the circuit court's July 29, 2020 order, and remand the case for entry of an order dismissing Ms. Linville's causes of action against the Commission.

Writ granted.

Reversed and remanded.